**FILED**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MAR 1 1 2003

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | JUDGE JAMES B. ZAGEL |
|  | ) | UNITED STATES DISTRICT COURT |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 03 CR 11 |
|  | ) | Judge James T. Moody, By Special |
|  | ) | Designation of The Executive Committee |
| MATTHEW HALE, | ) | Judge James B. Zagel, Emergency Judge |
|  | ) |  |
| Defendant. | ) |  |

DOCKETED

MAR 1 3 2003

## DEFENDANT'S EMERGENCY MOTION TO ENFORCE
## MAGISTRATE JUDGE RODOVICH'S DETENTION ORDER
## OF FEBRUARY 12, 2003, REGARDING ATTORNEY CONSULTATION

Defendant, **MATTHEW HALE**, by his attorneys, **THOMAS ANTHONY DURKIN**

and **PATRICK W. BLEGEN**, pursuant to 18 U.S.C. §3142(i)(3) and the Due Process and

Effective Assistance of Counsel clauses of the Fifth and Sixth Amendments to the Constitution

of the United States, respectfully moves this Court to enforce the detention order entered in the

above proceedings by Magistrate Judge Andrew P. Rodovich in a written order dated February

12, 2003, by requiring John Ashcroft, the Attorney General of the United States, Patrick

Fitzgerald, United States Attorney for the Northern District of Illinois, Dr. Kathleen Hawk

Sawyer, Director of the United States Bureau of Prisons, J. F. Graber, Warden of the

Metropolitan Correctional Center Chicago, and any and all of their duly authorized

representatives, to comply with the order's express terms, which provide that the Defendant shall

be afforded reasonable opportunities for private consultation with his attorney; and, as such, to

specifically enjoin the government, or its aforesaid representatives, from requiring any Attorney

Affirmations as a precondition of private consultation with the Defendant.



In support of this motion, Defendant, through counsel, shows to the Court the following:

1.     This motion qualifies as an emergency matter under Local Rule 77.2(a)(3), as it involves counsel's ability to consult with their client, a pre trial detainee in a serious criminal matter with pending dates for pre trial motions and jury trial. Notwithstanding these dates, and the Magistrate's order directing that Defendant be afforded reasonable opportunities for private consultation with his attorneys, Attorney General Ashcroft instituted Special Administrative Measures (SAMs) upon Defendant sometime last week. Defendant is now being held virtually incommunicado to the outside world, and counsel have been notified by the U.S. Attorney's Office that they will not be granted access to Defendant without first executing "attorney affirmations" in which they acknowledge these SAMs and agree to abide by them. A delay in hearing this matter would, therefore, result in serious and irreparable harm to Defendant's Fifth and Sixth Amendment rights to Due Process and Effective Assistance of Counsel. The trial judge specially assigned to this case, United States District Judge James Moody of the Northern District of Indiana, is currently not sitting, and will not be available until, at least, March 19, 2003. Defendant requests, pursuant to Local Rule 77.2(b), therefore, that this Court hear this motion as an emergency matter.

2.     The events leading up to what counsel would describe as an unprecedented draconian situation are as follows.[1] On January 8, 2003, Defendant, an avowed White Supremacist and the Pontifex Maximus of The World Church of the Creator, was arrested on a

---

[1]While counsel's research has uncovered cases in which SAMs were instituted against defendants who had already been convicted, other than *United States v. Reid*, 214 F. Supp. 2d 84 (D. Mass. 2002), counsel's research has uncovered no cases in which SAMs were instituted against a pretrial detainee. Notably, in *Reid*, the now infamous "shoe bomber" case, the government apparently agreed not to require attorney affirmations.

warrant issued upon a sealed indictment charging solicitation of a crime of violence in violation of 18 U.S.C. §373, and corruptly impeding a federal officer in violation of 18 U.S.C. §1503(a). The allegations in the indictment involve the alleged solicitation of the murder of the Honorable Judge Joan Humphrey Lefkow, a United States District Court Judge in this District. Judge Lefkow is presiding over a trademark infringement case involving Defendant and his church. Defendant was arrested when he entered the Dirksen Federal Building to answer a rule to show cause issued by Judge Lefkow.

3. This matter was originally assigned to the calendar of the Honorable Elaine E. Bucklo. However, on January 22, 2003, the Executive Committee of this District entered an order specially designating United States District Judge James Moody, U.S. District Court Judge for the Northern District of Indiana, to preside over this case due to the nature of the charges. Judge Moody set a trial date of July 14, 2003, and pre-trial motions are due on April 15, 2003.

4. On January 23, 2003, after a detention hearing on the motion of the government, Defendant was ordered detained by Magistrate Rodovich, pursuant to 18 U.S.C. § 3142(e). Magistrate Rodovich was also specially designated to hear this matter by the same Executive Committee order designating Judge Moody. The Magistrate reduced his oral detention findings to writing in a ten-page Detention Order dated February 12, 2003. A copy of said order, marked Exhibit A, is attached hereto and made part hereof. As the order expressly states, and as is required by the detention statute, 18 U.S.C. §3142(i)(3): "[t]he Defendant shall be afforded reasonable opportunities for private consultation with his attorney." (Order, p. 10)[2]

---

[2] An appeal of this detention order was filed with Judge Moody on March 3, 2003, and is presently awaiting a briefing schedule.

3

5.     On January 25, 2003, undersigned counsel were retained by Defendant's family, and on February 4, 2003, were granted leave to substitute for the Federal Defender Program, who had previously represented Defendant.

6.     On the afternoon of Friday, March 7, 2003, and notwithstanding the order of Magistrate Rodovich regarding consultation with counsel, undersigned counsel were informed by the U.S. Attorney's Office that they would not be permitted to have any contact with Defendant, in person, by telephone, or mail, unless and until they executed an attorney affirmation of Special Administrative Measures (SAMs).  A copy of the government's letter denying counsel access to Defendant is marked Exhibit B, and is also attached hereto and made part hereof.

7.     The foregoing history of events is documented by the following correspondence between the parties:

(a)     On March 3, 2003, counsel were forwarded a copy of Special Administrative Measures (SAMs) that the Attorney General had requested to be implemented upon Defendant by the Director of the Bureau of Prisons, ostensibly pursuant to the Attorney General's purported authority under 28 C.F.R. § 501.3.  A copy of the transmittal letter from the U.S. Attorney's Office, marked Exhibit C-1, is attached hereto and made part hereof.  A copy of a memorandum dated February 24, 2003, from Attorney General Ashcroft to Dr. Kathleen Hawk Sawyer, Director Federal Bureau of Prisons, marked Exhibit C-2, will be filed separately under seal in light of the purported "Limited Official Use" designation of the document.

(b)     On March 4, 2003, undersigned counsel were each forwarded a document entitled "Attorney Affirmation-Matthew Hale Special Administrative Measures" for their signatures.  A copy of said affirmations, and their transmittal letters, are also attached hereto as Exhibits, D-1 and D-2, respectively.  Said affirmations require, among other things, counsel's acknowledgment of their "awareness and understanding of the SAMs provisions and [their] agreement to abide by those provisions, particularly those that relate to contact between the inmate and his attorney and the attorney's staff."

(c)     On March 6, 2003, undersigned counsel respectfully declined to execute the attorney affirmations for a variety of reasons, not the least of which being that

4

they were not inmates of the Bureau of Prisons and subject, therefore, to regulations the Attorney General might see fit to institute against inmates. A copy of counsel's letter communicating their position with respect to the attorney affirmations, marked Exhibit E, is also attached hereto and made part hereof.

8. As previously noted, trial in this matter is presently scheduled for July 14, 2003,[3] and pre-trial motions are due to be filed on or before April 15, 2003. Counsel submit that it should be obvious that they cannot prepare for trial, prepare pre-trial motions, or meaningfully serve as Defendant's counsel in the manner required by the Sixth Amendment without having access to Defendant. It is submitted as well, that counsel's access to Defendant ought not be delayed until Judge Moody's return, on March 19, 2003.[4] This is particularly so where Defendant has not been able to communicate with counsel since March 4, 2003 (the day counsel were informed that the Attorney General had instituted the SAMs); and, other than apparently having been presented with the SAMs by a B.O.P. official, Defendant has no knowledge of these recent events and his attorneys' efforts on his behalf.[5]

9. More obvious, and equally to the point with respect to Defendant's rights to Due Process and Effective Assistance of Counsel and the "Catch 22" in which the Attorney General has now placed Defendant, without access to Defendant, counsel cannot even consult with him with respect to the position he wishes them to take regarding these SAMs; whether he wishes to

---

[3]The parties have discussed the possibility of moving the trial to an earlier date to accommodate the schedule of undersigned counsel who appeared in the case subsequent to the setting of the July 14th date.

[4]Defense counsel attempted to contact Judge Moody's clerk on the afternoon of Friday, March 7, 2003, after having received the government's letter indicating they were to have no contact with Defendant. Judge Moody's clerk returned counsel's call on Monday, March 10, 2003, and indicated that Judge Moody is out of his chambers and will not return until March 19, 2003.

[5]The government has indicated that it agrees that this motion should be treated as an emergency motion.

pursue any administrative or judicial remedies that might be available to him; or, for that matter, whether Defendant wishes to continue to be represented by counsel who refuse to sign the Attorney Affirmations.

10. Counsel submit, as well, that the federal regulation pursuant to which the Attorney General purported to issue the SAMs does not authorize the Attorney General or anyone else to require defense counsel to execute "attorney affirmations" as a precondition to consulting with their clients. *See*, 28 C.F.R. § 501.3. Furthermore, counsel's research has not revealed any lawful authority for the Attorney General to condition a pre-trial detainee's constitutional right, among other things, to effective assistance of counsel and counsel of his choosing, upon the execution of the proposed attorney affirmations. *See, generally, United States v. Reid*, 214 F. Supp. 2d 84 (D. Mass. 2002).

Respectfully submitted,

THOMAS ANTHONY DURKIN,

PATRICK W. BLEGEN, Attorneys for the Defendant.

**DURKIN & ROBERTS**
53 West Jackson Boulevard, Suite 615
Chicago, Illinois 60604
(312) 922-8980

6

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA     )
                              )      NORTHERN DISTRICT OF ILLINOIS
       v.              )      CRIMINAL NO. 03-CR-11
                              )
MATTHEW HALE             )

## DETENTION ORDER

On January 23, 2003, a hearing was conducted on the government's motion to detain the defendant, Matthew Hale, without bond. The court now makes the following findings of fact:

1. The defendant currently is charged in a two count indictment with a violation of 18 U.S.C. §§ 373 and 1503(a). If convicted, the defendant faces a maximum sentence of 20 years imprisonment on Count 1 and ten years imprisonment on Count 2.

2. At the detention hearing, the government introduced a group exhibit and proffered evidence. The defendant also made a proffer. The court has reviewed the prebond report prepared by the United States Probation Department.

3. The defendant is the Pontifex Maximus of a White supremacist movement called the World Church of the Creator. The headquarters of the organization is located at the defendant's residence in East Peoria, Illinois.

4. The World Church of the Creator has members throughout the United States and provides its members with a variety of publications. One of these publications is the White Man's Bible written by Ben Klassen, the founder of the Church of the Creator.



DEFENDANT'S
EXHIBIT
A

5. The organization is dedicated to the "survival, expansion and advancement of the White race." (Cover, The White Man's Bible)

6. The White Man's Bible also contains the following statements:

> ". . . **Survival at all costs!** The end justifies the means, any means!" (p. 424)

> \* \* \*

> "There is an ultimate weapon that such a beleaguered people [the White man] can resort to against its 'own' government that has been utilized for thousands of years when the situation has become desperate and intolerable. That weapon is terrorism and violence, taking the law into your own hand." (p. 425)

> \* \* \*

> "When persuasion and reason fail, the only recourse is violence, legal or illegal." (p. 425-26)

> \* \* \*

> "Now we come to the crux of our position. **Should the Jewish government use force to violate our Constitutional rights** to freely practice our religion; to peacefully assemble; to peacefully organize; to distribute our White Man's Bible; to use the mails and any other prerogative in promoting and expanding our legal religious organization and the full practice of our religion, **then we have every right to declare them as open criminals violating the Constitution and the highest law of the land. They then obviously are the criminals, and we can treat them like the criminal dogs they are and take the law into our own hands.** This is the obvious, logical thing to do. We must then meet force with force and open warfare exists. It will then be open season on all Jews." (pp. 429-30)

2

* * *

> "The end justifies the means.  This is the
> highest law of the universe and supersedes
> any local, state or national laws enacted by
> any government, whatever its nature." (p.
> 431)

7.   In *Te-ta-ma Truth Foundation-Family or Uri, Inc. v. the World Church of the Creator*, filed under Cause No. 00 C 2638 in the United States District Court for the Northern District of Illinois, the plaintiff alleged that it had a trademark on the name "The World Church of the Creator" and that the defendant organization's use of that name violated the Lanham Act, 15 U.S.C. § 1051 *et. seq*.  On November 19, 2002, the Honorable Joan H. Lefkow issued an injunction in favor of the plaintiff.  In addition to finding a violation of the Lanham Act, the injunction also prohibited the defendant organization from using the name "The World Church of the Creator" and required the defendant organization to destroy any documents or other materials bearing that name.

8.   After the November 19, 2002 Order, the defendant sent two e-mails criticizing Judge Lefkow's decision.  In an e-mail dated November 20, 2002, the defendant referred to the "dranconian [sic] order that in effect places our Church in a state of holy war with this federal judge and any acting on authority from her kangaroo court." The e-mail further stated:

> As I am sure you will understand, it is
> necessary that I speak in generalities con-
> cerning the response of the Church to such an
> obvious violation of our religious rights.
> This is so because I am all too aware that
> the enemies of our people read my every word

3

> and seek to use them against our Church and I
> in their various attacks upon us.

* * *

> They then obviously are the criminals, and we
> can treat them like the criminal dogs they
> are and take the law into our own hands.
> This is the obvious, logical thing to do. We
> must then meet force with force and open
> warfare exists.

9. In a December 4, 2002 e-mail to the confidential informant, the defendant asked him to find the home addresses of Judge Lefkow and the attorneys who represented the plaintiff in the civil proceeding. The e-mail referred to Judge Lefkow as a "Probable Jew", described two attorneys as "Jew," and referred to a third attorney as "Traitor White." The e-mail concluded:

> "Any action of any kind against those seeking
> to destroy our religious liberties is en-
> tirely up to each and every Creator according
> to the dictates of his own conscience."

10. On December 5, 2002, the defendant met with the confidential informant who was wearing a body wire. The two individuals then discussed Judge Lefkow's decision:

| | |
|---|---|
| CI: | Well I got your e-mail about the Jew judge. . . . |
| Hale: | Right. |
| CI: | . . . you wanting his address and all his rats. Ah |
| Hale: | That information . . . yes . . . for educational purposes and for whatever reason you wish it to be. |
| CI: | Are you gonna . . . I am working on it. I, I got a way of getting it. Ah, when we get it, we gonna exterminate the rat? |

4

Hale: Well whatever you wanna do basi-
cally.

CI: Jew rat.

Hale: . . . You know, ah . . . my posi-
tion has always been that I you
know, I'm gonna fight within the
law and, but ah that information's
been provided if you wish to do
anything yourself you can. So that
makes it clear.

CI: Consider it done.

Hale: Good.

CI: Consider it done . . . it's fucked
up man . . .

(Transcript, p. 3)

11. The confidential informant and the defendant again met on December 17, 2002 and discussed the adverse decision:

Hale: I just, I just don't think you know
I can't (unintelligible) . . . I
mean ah, I won't deny that if I
wake up in the morning and I read
the newspaper about what happens to
certain people that I don't like, I
won't deny that I . . . that you
know, I won't have a smile on my
face or I won't, if I'm eating my
salubrious living and happen to see
that various individual or indivi-
duals . . . er . . . you know had a
serious altercation, I'm not gonna
say that I won't be happy about it
but at the same time, I simply
cannot . . . ah, you know be any
kind of a party.

CI: Yeah, but what's going to happen?
I, I understand everything (unin-
telligible) but you know if we
don't talk then they might think
something any ways so.

5

Hale:       I just don't think its wise, I
            think that you know it just puts me
            in jeopardy when you do this.

                        * * *

Hale:       Alright, just understand the theo-
            retical.

CI:         . . . and they good.  That's the
            reason I'm usin' 'em.

Hale:       Well you know, in theoretical terms
            ah, you gotta understand that if
            all this would come to pass, it
            would be a very, very heated situa-
            tion.  A lot of individuals come to
            me wanting answers and obviously
            . . .

CI:         . . . you just tell them you don't
            know nothing.  You know nothing.

Hale:       Obviously that's what would have be
            maintained.

CI:         Right.

(Transcript, pp. 15 and 17)

12.  On May 24, 2002, the confidential informant and the
defendant discussed a minister in the World Church of the Creator
who the defendant felt had been disloyal:

Hale:       . . . you're either with the Church
            or against the Church.

CI:         Right.

Hale:       It's as simple as that.

CI:         Right.

Hale:       . . .  So I was pretty pissed off
            at one of my minister was even
            thinking about this bullshit
            . . . in that sense, I can't be-
            lieve that crap he's been a minis-
            ter for four or five years this
            guy.

6

CI:     You know where my heart is . . .

Hale:   I know brother, I know, I know
. . . . I know . . . and I know damn,
that if I were to tell you right
now to go out there and shoot the
bastard you would in a heartbeat
. . . . I know you would, and you
know believe me, you know it's
tempting . . . believe me, so we'll
keep things in perspective. You
know one thing I have learned from
the movement is that criticism like
this ah . . . ah, I guess that's
the word I would use . . . slander-
ers like this don't last forever,
you know. He's not going to be
able to get away with this shit
forever and ah . . . you know I
can't see like a year from now no
like he's just going to run out of
gas eventually because everyone's
going to tell him to go straight to
hell, just about everyone is. Now
and then you might find some idiot
out there that would listen to what
he has to say. Hear what he's
going to say. I guess a good re-
sponse to that stupid e-mail he
sent out . . . our guys in Montreal
said, ah you're asking PM Hale what
he would do if you came to Illinois
so what would you do if WCOTC Mon-
treal shows up at your doorstep you
fucking bastard.

CI:     (laughter)

Hale:   (unintelligible). . . . They said
shove your COTC up your fucking ass
(laughter).

13. Between July 2, 1999 and July 4, 1999, Benjamin Nathan-
iel Smith embarked on a shooting spree which killed two individu-
als and wounded several others. Smith was a member of the World
Church of the Creator and met with the defendant on several
occasions prior to the shooting spree. When the defendant was

7

questioned by the FBI on July 7, 1999, he indicated that he thought that Smith was the one involved in the shooting spree but did not notify the authorities because it was their job to solve the crime.

14. The defendant lives with his father in East Peoria, Illinois and operates the World Church of the Creator out of his father's residence. The defendant has no other source of income.

15. On December 20, 1991, the defendant was convicted of obstructing justice in Peoria and placed on 30 months probation. On May 14, 1992, the probation was revoked, and the defendant was sentenced to 70 days in prison. On November 24, 1993, the conviction was reversed on appeal and the case was dismissed.

16. The defendant owns a valid Illinois Firearm Owner's Identification card.

17. On January 8, 2003, FBI agents executed a search warrant for the defendant's residence. The defendant's father indicated that the defendant owned one firearm and provided a description of that weapon. Federal agents found eight other firearms during the search but did not recover the weapon described by the defendant's father.

Under 18 U.S.C. § 3142(e), a defendant may be detained as a danger to the community if he is charged with a crime of violence under Section 3142(f)(1)(A). Under Section 3156(a)(4), the defendant is charged with a crime of violence.

The government has demonstrated by clear and convincing evidence that the defendant is a danger to the community and

8

"that no condition or combination of conditions will reasonably assure . . . the safety of . . . the community . . . ." Section 3142(e). The defendant is a member of a White supremacist organization which advocates hatred and violence. After Judge Lefkow entered an order against the defendant's organization, he encouraged the confidential informant to "exterminate" the judge and the attorneys involved in the case. Because the defendant felt that he was being watched and that his e-mails were being intercepted, he attempted to distance himself from any direct involvement in the attack. However, it is clear from the defendant's comments that he expected the confidential informant to "take the law into our own hands" and to "meet force with force and open warfare . . . ." Finally, a search of the defendant's residence resulted in the seizure of eight weapons but not the gun described by the defendant's father.

The government also has demonstrated by a preponderance of the evidence that the defendant is a flight risk. The defendant lives with his father and is not employed except for the World Church of the Creator. This organization has members throughout the country, and the defendant undoubtedly could enlist their assistance in hiding from federal authorities who he views as corrupt and illegitimate.

The defendant's only prior conviction was reversed on appeal. However, he did not comply with the terms of his probation, and the probation was revoked. Under all of the circum-

9

stances, it is unlikely that the Probation Department could effectively monitor the defendant is released on bond.

The government's motion for pretrial detention is **GRANTED**, and the defendant is **ORDERED HELD WITHOUT BOND.** 18 U.S.C. § 3142(e).

Pursuant to 18 U.S.C. §3142(i), it is further **ORDERED** that:

A. The defendant shall be committed to the custody of the Attorney General for confinement to a corrections facility separate, to the extent practicable, from persons who are confined after a conviction;

B. The defendant shall be afforded reason- able opportunities for private consulta- tion with his attorney; and

C. The defendant shall be delivered to the custody of the United States Marshal when the appearance of the defendant for any court proceeding is required.

ENTERED this ___12___ day of February, 2003

Andrew P. Rodovich
United States Magistrate Judge

10



**U.S. Department of Justice**

*United States Attorney*
*Northern District of Illinois*

---

*M. David Weisman*                    *Dirksen Federal Courthouse*                    *(312) 353-5300*
*Assistant United States Attorney*     *219 South Dearborn, Room 500*                  *Fax: (312) 353-4322*
*Direct dial: (312) 353-2119*          *Chicago, Illinois 60604*

March 7, 2003

Mr. Patrick Blegen
Mr. Thomas Durkin
53 W. Jackson Blvd., Suite 615
Chicago, IL 60604
Fax: (312) 922-2055
*Via facsimile*

Re:    *United States v. Matthew Hale*
       03 CR 011

Dear Gentlemen:

I am in receipt of Mr. Durkin's letter dated March 6, 2003 outlining your position regarding the Special Administrative Measures ("SAM") in place for Mr. Hale. I understand your position and concerns but respectfully would disagree with them. Pursuant to the SAM and its directives, this office will require your respective signatures to an affirmation that you will comply with the SAM. Until that affirmation is received, as reflected in the SAM, you will not be permitted to have "attorney/client-privileged contact with" Mr. Hale. *See* SAM, ¶2(a)(i).

Based on your letter, it is my understanding that you wish to litigate this matter further. In light of your pending motion and the government's motion for entry of a protective order, I believe that we should set some date to appear before Judge Moody



Blumberg No 6114

**DEFENDANT'S EXHIBIT**
B

Letter to Messrs. Durkin and Blegen
March 7, 2003
Page 2 of 2

and put in place briefing schedules, or other scheduling as Judge Moody deems appropriate. Despite these philosophical disagreements, I appreciate that you do not view this issue as a personal matter on either side of the argument. Please let me know how you would next like to proceed.

Very truly yours,

PATRICK J. FITZGERALD
United States Attorney

By:    M. DAVID WEISMAN
       Assistant U.S. Attorney

cc:    Mary Ellen Doucette-Lunstrum



**U.S. Department of Justice**

*United States Attorney*
*Northern District of Illinois*

---

| | | |
|---|---|---|
| *M. David Weisman* | *Dirksen Federal Courthouse* | *(312) 353-5300* |
| *Assistant United States Attorney* | *219 South Dearborn, Room 500* | *Fax: (312) 353-4322* |
| *Direct dial: (312) 353-2119* | *Chicago, Illinois 60604* | |

March 3, 2003

Mr. Patrick Blegen
Mr. Thomas Durkin
53 W. Jackson Blvd., Suite 615
Chicago, IL 60604
Fax: (312) 922-2055
*Via facsimile and hand delivery*

   Re: *United States v. Matthew Hale*

Dear Mr. Blegen:

   Pursuant to our conversation of today's date, enclosed please find a copy of the Special Administrative Measure ("SAM") put into place on today's date by the Bureau of Prisons. As I indicated, I apologize for any inconvenience caused to Mr. and Mrs. Hale due to their inability to meet with the defendant in this matter. I did not consider it appropriate disclosing the existence of the SAM until it was actually put into place. Moreover, I was unaware that the defendant's parents had a trip planned to Chicago on today's date. More importantly, after you have reviewed the SAM, please contact me so that I can raise any questions you and/or your client may have regarding the SAM when I meet with the Warden this afternoon.

   Thank you for your continued cooperation in this matter.

          Very truly yours,

          PATRICK J. FITZGERALD
          United States Attorney

By:           
          M. DAVID WEISMAN
          Assistant U.S. Attorney

Enclosure



DEFENDANT'S
EXHIBIT
C-1

**Exhibit C-2**
**Filed Separately Under Seal**



Blumberg No. 5114

DEFENDANT'S
EXHIBIT
C-2



**U.S. Department of Justice**

*United States Attorney*
*Northern District of Illinois*

| | | |
|---|---|---|
| *M. David Weisman*<br>*Assistant United States Attorney*<br>*Direct dial: (312) 353-2119* | *Dirksen Federal Courthouse*<br>*219 South Dearborn, Room 500*<br>*Chicago, Illinois 60604* | *(312) 353-5300*<br>*Fax: (312) 353-4322* |

March 4, 2003

Mr. Thomas Durkin
53 W. Jackson Blvd., Suite 615
Chicago, IL 60604

  Re: *Special Administrative Measures of Matthew Hale*

Dear Mr. Durkin:

  Below please find the attorney affirmation associated with the SAM for Mr. Hale. Please read and sign the affirmation. Our office must receive the original attorney affirmation back. Upon receipt of this signed affirmation, we will advise MCC - Chicago of your compliance with this aspect of the SAM.

        Very truly yours,

        PATRICK J. FITZGERALD
        United States Attorney

By:           
        M. DAVID WEISMAN
        Assistant U.S. Attorney

DEFENDANT'S
EXHIBIT
D-1

Blumberg No. 5114

ATTORNEY AFFIRMATION -
MATTHEW HALE SPECIAL ADMINISTRATIVE MEASURES

I am counsel of record for inmate Matthew Hale, U.S. Marshall Service Number: 15177424 and have received and read the "Notification of Special Administrative Measures" dated February 24, 2003. By signing this affirmation, I acknowledge my awareness and understanding of the SAM provisions and my agreement to abide by those provisions, particularly those that relate to contact between the inmate and his attorney and the attorney's staff. My signing of this affirmation does not serve as an endorsement of the SAM or the conditions of confinement, and does not serve to attest to any of the factors set forth in the conclusions supporting the SAM.

_____

Thomas Anthony Durkin



**U.S. Department of Justice**

*United States Attorney*
*Northern District of Illinois*

---

*M. David Weisman*
*Assistant United States Attorney*
*Direct dial: (312) 353-2119*

*Dirksen Federal Courthouse*
*219 South Dearborn, Room 500*
*Chicago, Illinois 60604*

*(312) 353-5300*
*Fax: (312) 353-4322*

March 4, 2003

Mr. Patrick Blegen
53 W. Jackson Blvd., Suite 615
Chicago, IL 60604

   Re: *Special Administrative Measures of Matthew Hale*

Dear Mr. Blegen:

  Below please find the attorney affirmation associated with the SAM for Mr. Hale. Please read and sign the affirmation. Our office must receive the original attorney affirmation back. Upon receipt of this signed affirmation, we will advise MCC - Chicago of your compliance with this aspect of the SAM.

       Very truly yours,

       PATRICK J. FITZGERALD
       United States Attorney

   By:    *M. David Weisman*

       M. DAVID WEISMAN
       Assistant U.S. Attorney



DEFENDANT'S
EXHIBIT
D-2
Blumberg No. 6114

ATTORNEY AFFIRMATION -
MATTHEW HALE SPECIAL ADMINISTRATIVE MEASURES

I am counsel of record for inmate Matthew Hale, U.S. Marshall Service Number: 15177424 and have received and read the "Notification of Special Administrative Measures" dated February 24, 2003. By signing this affirmation, I acknowledge my awareness and understanding of the SAM provisions and my agreement to abide by those provisions, particularly those that relate to contact between the inmate and his attorney and the attorney's staff. My signing of this affirmation does not serve as an endorsement of the SAM or the conditions of confinement, and does not serve to attest to any of the factors set forth in the conclusions supporting the SAM.

_____

Patrick W. Blegen

LAW OFFICES

# DURKIN & ROBERTS

THE MONADNOCK BUILDING
SUITE 615
53 WEST JACKSON BOULEVARD
CHICAGO, ILLINOIS 60604

THOMAS ANTHONY DURKIN
tdurkin@durkinroberts.com

INDIANA OFFICE
TELEPHONE (219) 872-5600

TELEPHONE (312) 922-8980
FACSIMILE (312) 922-2055

March 6, 2003

**BY FACSIMILE**
M. David Weisman
Assistant U.S. Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(*Facsimile:* 312-353-4322)

Re: *U.S. v. Matthew Hale*
 **No. 03 CR 11**

Dear David:

As you know from our recent telephone conversations, to say that we are troubled by the Attorney General's decision to impose Special Administrative Measures (SAMs) on our client, Matt Hale, would be putting it quite mildly. As we also indicated in our phone conversations, and made reference to in our detention pleading, we intend to challenge the SAMs, as they are being applied to Mr. Hale, on a variety of First, Fifth and Sixth Amendment bases. This challenge will take us, we estimate, at least two weeks to research, formulate, prepare and file.

Among our many constitutional concerns with the SAMs,[1] and our first and foremost from a timing perspective, is the government's very insistence that we execute the Attorney Affirmation you provided both me and Mr. Blegen in your transmittal letter dated March 4, 2003. First, we do not believe there is any authority to require an attorney to affirm administrative measures the Bureau of Prisons chooses to place on an inmate. With all due respect, we are not inmates subject to regulation by the Bureau of Prisons or the Justice Department. Second, preconditioning our attorney-client visits with Mr. Hale at the MCC flies directly in the face of Magistrate Rodovich's detention order of February 12, 2003, which expressly requires that Mr. Hale "shall be afforded reasonable opportunities for private consultation with his attorney." Magistrate's Order, p. 10. Third, the affirmation may very well violate my and Mr. Blegen's

---

[1] These concerns are by no means novel or original. *See, e.g., United States v. Reid*, 214 F.Supp.2d 84, 94 (D.Mass. 2002). It is also our understanding that there is ongoing litigation over the constitutionality of the SAMs, and the attorney affirmations in particular, in the widely publicized case of Attorney Lynne Stewart, S.D.N.Y., No. 02 CR 396. We also understand the constitutionality of the SAMs have been extensively briefed and argued in the case of *United States v. Wadih El-Hage, et al.*, 213 F.3d 74 (2nd Cir. 2002) (*per curiam*). U.S. Attorney Patrick Fitzgerald should be quite familiar with the bases of these constitutional arguments based upon his personal involvement in the *El-Hage* case and his negotiation of the Stewart SAMs that originated therein.



Blumberg No. 5114 DEFENDANT'S EXHIBIT E

M. David Weisman
March 6, 2003
Page Two

rights to, among other things, freedom of speech and to practice our profession. Fourth, conditioning our access to Mr. Hale may also severely limit our ability and obligation to defend Mr. Hale zealously, and thereby, affect Mr. Hale's Sixth Amendment rights. *See*, *United States v. Reid*, 214 F.Supp.2d 84, 94 (D.Mass. 2002). And, finally, in that the government has already used affirmations such as these as the underlying predicate to indict a criminal defense lawyer in the Lynne Stewart case currently pending in Southern District of New York, No. 02 CR 396, neither Mr. Blegen, nor I, wish to provide your office or the Attorney General with a vehicle with which to intimidate us throughout the course of these proceedings should the government not approve of the manner in which we choose to defend Mr. Hale. *See also*, *Reid*, *supra*, at 94-95.

Needless to say, just as you have asked us not to take the requirement of the affirmations personally, we mean no personal disrespect to you, Ms. Peters or anyone else in your office by expressing these concerns of ours to you. As we trust you can understand, we believe our obligations to our client, as well as the obligations our role in the system places upon us as defense attorneys, require us to lawfully resist these measures. Accordingly, we respectfully decline to execute the affirmations. Nor, in light of Magistrate Rodovich's detention order, and the seriousness of the issue, do we deem it appropriate to enter into any temporary agreements pending a resolution of our differences over the affirmations.

Therefore, please let us formally know as soon as possible whether your office or the Bureau of Prisons intends to use our refusal to execute these affirmations as a basis to deny us attorney-client visitation with Mr. Hale. We need very much to consult with him over the weekend, as he has attempted to contact us several times this week by telephone.

Sincerely yours,

Thomas Anthony Durkin

TAD/jg

cc: Matt Hale
    Russell Hale

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS **FILED**
### EASTERN DIVISION

UNITED STATES OF AMERICA,           )

           Plaintiff,           )

v.           )

MATTHEW HALE,           )

           Defendant.           )

MAR 11 2003

JUDGE JAMES B. ZAGEL
UNITED STATES DISTRICT COURT

No. 03 CR 11
Judge James T. Moody, By Special
Designation of The Executive Committee
Judge James B. Zagel, Emergency Judge

## NOTICE OF EMERGENCY MOTION

DOCKETED
MAR 1 3 2003

To:   **By Hand Delivery**
M. David Weisman
Victoria Peters
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

    **PLEASE TAKE NOTICE** that on Wednesday, March 12, 2003, at a time to be designated by the Court, I shall appear before the Honorable James B. Zagel, in Courtroom 2103 of the Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, and shall then and there present the attached Defendant's Emergency Motion to Enforce Magistrate Judge Rodovich's Detention Order of February 12, 2003, Regarding Attorney Consultation, a copy of which is hereby served upon you.

    Dated: March 11, 2003

                         **PATRICK W. BLEGEN**, One of the
                         attorneys for Defendant.

**PATRICK W. BLEGEN**
53 West Jackson Boulevard, Suite 615
Chicago, Illinois 60604
(312) 922-8980



## CERTIFICATE OF SERVICE

**PATRICK W. BLEGEN**, attorney at law, hereby certifies that on March 10, 2003, he

served, or caused to be served, the foregoing pleading on the following attorneys of record by

hand delivery:

M. David Weisman
Victoria Peters
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

**PATRICK W. BLEGEN**