UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.  03 CR 11 |
| | ) | Judge James T. Moody |
| MATTHEW HALE | ) | |

## NOTICE OF FILING AND CERTIFICATE OF SERVICE

TO:   Thomas Anthony Durkin
      Patrick W. Blegan
      Durkin & Roberts
      The Monadnock Building
      53 West Jackson Boulevard
      Suite 615
      Chicago, Illinois 60604

        PLEASE TAKE NOTICE that on Wednesday, April 9, 2003, the undersigned
filed the following document:

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO ENFORCE MAGISTRATE
JUDGE RODOVICH'S DETENTION ORDER AND DEFENDANT'S MOTION TO ENJOIN THE
GOVERNMENT FROM REQUIRING THE EXECUTION OF AN ATTORNEY AFFIRMATION**

                          M. David Weisman

                          M. DAVID WEISMAN
                          Assistant United States Attorney


STATE OF ILLINOIS )
                  )  SS
COUNTY OF COOK    )

        Karen Sima, being first duly sworn on oath deposes and says that she
is employed in the Office of the United States Attorney for the Northern
District of Illinois; that on April 9, 2003, she caused a copy of the
foregoing **NOTICE OF FILING AND CERTIFICATE OF SERVICE** along with a copy
of **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO ENFORCE MAGISTRATE
JUDGE RODOVICH'S DETENTION ORDER AND DEFENDANT'S MOTION TO ENJOIN THE
GOVERNMENT FROM REQUIRING THE EXECUTION OF AN ATTORNEY AFFIRMATION** to be
served on the above named individuals by messenger.

                          Karen Sima

SUBSCRIBED AND SWORN TO BEFORE ME
This 9th day of April 2003

Notary Public

"OFFICIAL SEAL"
Barbara J. Sims
Notary Public, State of Illinois
My Commission Exp. 05/21/2005

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES** | ) | **03 CR 11** |
| **v.** | ) | **Judge James T. Moody** |
| **MATTHEW HALE** | ) | |

DOCKETED

APR 1 1 2003

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO ENFORCE MAGISTRATE JUDGE RODOVICH'S DETENTION ORDER AND DEFENDANT'S MOTION TO ENJOIN THE GOVERNMENT FROM <u>REQUIRING THE EXECUTION OF AN ATTORNEY AFFIRMATION</u>

The UNITED STATES, through its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, responds as follows to defendant's motion to enforce Judge Rodovich's detention order, and defendant's motion to enjoin the government from requiring the execution of an attorney affirmation pursuant to Special Administrative Measures (hereinafter "SAMs") now governing defendant Matthew Hale's detention at the Metropolitan Correctional Center - Chicago:

### <u>BACKGROUND</u>

On January 7, 2003, defendant Matthew Hale was indicted on charges of soliciting a crime of violence in violation of 18 U.S.C. § 373, and corruptly impeding a federal officer in violation of 18 U.S.C., § 1503(a). On January 8, 2003, he was arrested and arraigned before the Honorable Elaine E. Bucklo, of the Northern District of Illinois. On January 22, 2003, pursuant to an order issued by the Executive Committee of the Northern District of Illinois, this matter was assigned to this Court.



On January 23, 2003, a detention hearing was held before the Honorable Andrew P. Rodovich, Magistrate Judge of the Northern District of Indiana. After hearing proffered evidence, Magistrate Judge Rodovich issued an order detaining the defendant, finding the defendant both a danger to the community and a flight risk, and further finding that the no conditions or combination of conditions could reasonably ensure the safety of the community, and the defendant's continued appearance before the Court.[1] *See* Rodovich Order, dated 2/12/03. As part of his order, and pursuant to 18 U.S.C., § 3142(i), Judge Rodovich further ordered that "the defendant shall be afforded reasonable opportunities for private consultation with his attorney." *See* Rodovich Order.

On Friday, March 7, 2003, the government advised defense counsel that Special Administrative Measures (hereinafter "SAM" or "SAMs") had been put in place, governing defendant's contact with his counsel as well as contact with family members.[2] In general, the SAMs institute measures that are intended to limit defendant's ability to send or receive information that could be used to solicit crimes of violence. To accomplish this goal, the SAMs provide for monitoring of social visits between defendant and family members, the monitoring of social telephone calls, and the monitoring of non-legal mail sent or received by

---

[1] Defendant appealed Judge Rodovich's findings. This Court, in an order dated March 19, 2003, conducted an independent review of the evidence presented at the detention hearing and denied defendant's motion to for revocation of the pending detention order.

[2] The government has provided a copy of the SAMs to this Court. Because the SAMs contains sensitive information, the government has requested that the SAMs itself not be publicly filed.

the defendant. Additionally, there are other limitations placed on defendant's access to other inmates and other means of communicating with the associates other than family members.[3]

The SAMs place virtually no limitation on defendant's access to privileged communication with his counsel. Indeed, the SAM sets out a cadre of affirmative rights of access to counsel including the right to privileged conversations; the right to have simultaneous legal visitors; the right to legally-privileged telephone calls; the right of defense counsel's staff to participate in conversations with defendant; the right of the defendant to initiate legally-privileged telephone calls; the right to receive legal documents from defense counsel; and the right of defense counsel to disseminate information provide by the defendant to third parties provided that such dissemination is related to the preparation of the defense of the defendant.[4] Moreover, the SAMs provide that defendant's conversations with his

---

[3]     The government notes that in the instant motion, defendant does not "acknowledge the propriety fo the SAMs on pre-trial detainees in general, and Hale in particular; and reserve[s] the right to challenge the SAMs as applied to Hale as part of the pre-trial motions." Defendant's Motion, n. 1. Accepting the defendant's invitation, the government does not attempt to defend the propriety for the SAMs as it is applied to Hale, but simply notes that the reasons stated in Judge Rodovich's opinion (*see* Rodovich Order) as well as those reasons articulated by this Court in its opinion denying defendant's Motion for Revocation of Detention Order fully justify the restrictions put in place against the defendant. Simply stated, the defendant has focused his entire adult life in creating, organizing, and leading an organization that is premised on hatred towards "non-whites" and has encouraged its members to resort to violence when such violence would benefit the defendant.

[4]     In enumerating these rights, the government does not mean to suggest that providing such rights to defendant is a magnanimous gesture. The government recognizes the importance of defendant's right to counsel, and the concomitant need for defense counsel to use the information provided by the defendant to fully explore and develop a defense in this case. The SAMs honor the defendant's right to counsel and counsel's right to effectively use information provided. The itemization of these provisions of the SAMs is intended to illustrate

(continued...)

-3-

counsel will remain privileged. Various provisions of the SAMs explicitly state that the provision does "not allow monitoring of attorney/client privileged communications."

The SAM provides that prior to having privileged conversations with defendant, defense counsel must sign an affirmation (hereinafter "attorney affirmation") indicating that they are aware of the SAM's restrictions and that "they will not forward third-party messages to or from the inmate." In the instant motion, defendant and his counsel challenge "the authority of the Attorney General to circumvent Magistrate Rodovich's detention order by imposing the requirement that [defense] counsel execute Attorney Affirmation as part of the SAMs placed upon Hale." Defendant's motion, p. 2.

On March 11, 2003, the defendant and his counsel filed a motion entitled "Defendant's Emergency Motion to Enforce Magistrate Judge Rodovich's Detention Order of February 12, 2003, Regarding Attorney Consultation." On March 12, 2003, the parties appeared before Judge Zagel to resolve defendant's motion. After finding that he had jurisdiction to rule on Defendant's motion (*see* March 12, 2003 Transcript, page 3 (hereinafter "Tr." followed by page number), Judge Zagel found that "the government does have authority to issue the SAMs." Tr. 22, Judge Zagel further found that the risks posed by defendant and his leadership role within the white supremacy movement can be analogized to the risks posed by leaders of fundamentalist Islamic terrorists organizations as described in *United States v. El-Hage,* 213 F.3d 74 (2nd Cir. 2000), XXX. *See* Tr. 24. Judge Zagel then concluded by

---

[4](...continued)
that the SAMs provide defendant with meaningful access to his counsel.

finding that "the SAM is probably issued with authority," and suggested that the propriety of the SAMs could not be resolved until defense counsel identified some actual conflict created by the SAMs and their ability to defend their client. *See* Tr. 27, 28.

## SUMMARY OF ARGUMENT

In his motion, defendant asserts two bases for contesting the SAMs. First, defendant argues that the SAMs are "constitutionally infirm" because the attorney affirmations directly interfere with Judge Rodovich's detention order and the Sixth Amendment. Defendant's Motion, p. 3. Next, defendant argues that the Attorney General lacks the authority to require the signing of the attorney affirmation. *Id., 3-4*

Defendant utterly fails to explain how the SAMs impede or in any way interfere with Judge Rodovich's detention order. The SAMs do not impinge on Judge Rodovich's order that defendant be "afforded reasonable opportunities for private consultation with his attorney." 18 U.S.C., § 3142(i). Thus, defendant's claims that the SAMs violates Judge Rodovich's order is without merit.

Similarly, the SAMs do not interfere with defendant's Sixth Amendment right to counsel. Indeed, as is clear from the arguments proffered by defense counsel, the issue, as framed by defense counsel, is not one of defendant's right to counsel, but rather defense counsel's unwillingness to sign the attorney affirmation.

Finally, the Attorney General's authority to require defense counsel to sign the attorney affirmation is inherent in the regulation authorizing the SAMs.

## THE SAMs ALLOW DEFENDANT TO HAVE "REASONABLE OPPORTUNITIES FOR PRIVATE CONSULTATION WITH HIS ATTORNEY"

As part of his detention order and consistent with 18 U.S.C. § 3142(i), Judge Rodovich directed that "[t]he defendant shall be afforded reasonable opportunities for private consultation with his attorney." Rodovich Order, p. 10. The SAMs, in general, and the attorney affirmation, in specific, do not impinge on either the opportunity for consultation or the privacy of such consultation.

No provision in the SAMs curtail defendant's right to meet with his counsel. As detailed above, the SAMs provide a detailed list of affirmative representations regarding defendant's right to consult with his counsel. Rather than review in detail each provision of the SAMs and their impact (or non-impact as it were) on defendant's access to counsel, the government simply notes that nowhere in defendant's twelve page motion, or in the attachments thereto, does defense counsel even attempt to explain how defendant's access to counsel is affected by the attorney affirmation. *Cf.* Defendant's Motion, p.10 (construing the SAMs as the government's attempt at circumventing Judge Rodovich's order without an explanation to support this position).

The leading case on the propriety of a SAMs is *United States v. El-Hage*, 213 F.3d 74 (2nd Cir. 2000). Like the defendant in the instant case, the defendant in *El-Hage* was subjected to restrictions imposed through a SAMs and argued that "the conditions of his

confinement . . . [restricted] his ability to prepare his own defense."[5] *El-Hage*, 213 F.3d at

81. In reviewing the propriety of the SAMs, the Second Circuit, citing *Turner v. Safley*, 482

U.S. 78, 87 (1987), stated:

> To determine whether a prison regulation "burdens fundamental rights," the reviewing court asks whether the regulation is "'reasonably related' to legitimate penological objectives, or whether it represents an 'exaggerated response' to those concerns." . . . *Turner* outlined a four-factor test for evaluating whether a prison regulation that allegedly violates a constitutional right is reasonably related to a valid correctional objective. The court must consider first whether there is a "valid, rational connection" between the regulation and the legitimate governmental interest used to justify it; second, whether there are alternative means for the prisoner to exercise the right at issue; third, the impact that the desired accommodation will have on guards, other inmates, and prison resources; and fourth, the absence of "ready alternatives."

*El-Hage*, 213 F.3d at 81, quoting *Turner*, at 89-91. The Second Circuit went on to note that

"[w]here the regulation at issue imposes pretrial, rather than post-conviction, restrictions on

liberty, the 'legitimate penological interests' served must go beyond the traditional objectives

of rehabilitation or punishment." *El-Hage*, 213 F.3d at 81, citing *McGinnis v. Royster*, 410

U.S. 263, 273 (1973). The Second Circuit went on to hold that the government's use of the

SAMs was justified because the SAMs had a non-punitive objective and were reasonably

related to the objective of public safety.

---

[5]     In *El-Hage*, the defendant claimed that "the conditions of his confinement violated his due process rights." *El-Hage*, 213 F.3d at 81. In the instant case, the defendant does not raise that issue. Indeed, the thrust of defendant and his counsel's argument appears to be that both Judge Rodovich's order is being circumvented and defendant's Sixth Amendment rights are being denied. *See* Defendant's Motion, p. 10.

Assuming *arguendo* that the attorney affirmation requirement of the SAMs impinges on defendant's right to counsel, application of the *Turner* factors to the attorney affirmation requirement demonstrates that the SAMs is constitutionally valid because it is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. First, the government has requested the attorney affirmation to ensure that defense counsel acknowledge their "awareness and understanding of the SAM provisions" and agree "to abide by those provisions, particularly those that relate to contact between the inmate and his attorney and the attorney's staff."[6] *See* Attorney Affirmation (attached to defendant's filing). In short, the government seeks the affirmation to ensure public safety.

The request of the affirmation is a "valid, rational connection" to the government's interest of public safety. *El-Hage*, 213 F.3d at 81, citing *Turner*, 482 U.S. at 89. In this case, the evidence presented to date by the government has been described as "strong evidence of [the defendant's] intent that another person commit a felony crime of violence, and of his

---

[6]    As the government has stated, the undersigned has no reason to believe that defense counsel would purposefully attempt to further criminal activity on behalf of the defendant. However, an exchange between defense counsel and the prosecutor at the hearing on defendant's Emergency Motion illustrates why a written affirmation is necessary. During the course of argument, Mr. Durkin stated, "I wouldn't mind if all [the government] wanted me to do was acknowledge [the SAMs]. What I mind is the *abide by it*. Okay? [The government] indict[s] people for these things. They have a history now based on the Stewart case." Tr., p. 9 (emphasis added). The government responded as follows, "And to respond to the point I thought he brought up originally, which is that [Mr. Durkin] doesn't mind affirming to the SAM but he won't abide by it. That's the whole point of the affirmation." Tr., p. 16. Mr. Durkin then corrected himself and stated, "Just so it's clear, I didn't say I wouldn't abide. I simply said I'm more troubled by the provision of having to affirm that I'm going to abide than I am the — I'm troubled by the acknowledgment as well. I don't want to sign it all." Tr., p. 16. The ambiguity of the spoken word is exactly why the government seeks a written affirmation by defense counsel that they understand the terms of the SAMs and agree to abide by those terms.

endeavors to induce or persuade another person to commit that crime." Order, 3/19/03. Thus, this case presents a defendant who has attempted to induce another to commit a crime of violence and who is also the leader of an organization that considers itself "at war with a corrupt judicial system and government." *Id.* The government simply seeks to ensure that defense counsel will not spread messages from the defendant to his followers. As the Seventh Circuit has noted, "anyone who has access to a telephone or is permitted to receive visitors may be able to transmit a lethal message in code." *United States v. Johnson*, 223 F.3d 665, 673 (7th Cir. 2000). The risk of transmitting such a message is not diminished if done through an attorney's unwitting repetition of the defendant's coded language to his followers. The requirement of the attorney affirmation provides an added layer of protection – to wit, preventing defendant from spreading his messages through the mouths of his attorneys.[7]

The second factor considered under *Turner* is whether there are alternative means for defendant to exercise the right at issue. *Turner*, 482 U.S. at 90. This inquiry highlights the underlying defect with defendant and counsel's position. The right at issue – defendant's right to counsel – is not affected by the affirmation requirement. As explained above, defendant has yet to identify (either in his motions or before Judge Zagel) how defendant's right to counsel is affected.[8] Defendant's arguments are necessarily presented in the

_____

[7]    As previously indicated, the SAMs allow defense counsel to "disseminate the contents of the inmate's communication to third parties for the sole purpose of preparing the inmate's defense, and not for any other reason . . ." SAM, p. 4.

[8]    The pleadings and argument make clear that defense counsel does not like the

(continued...)

theoretical sense. As Judge Zagel noted, the concerns articulated by defense counsel as to

potential conflicts between counsel's representation of the defendant and compliance with the

SAMs are only theoretical in nature and until these theoretical concerns materialize into actual

conflicts, the issue is not ripe for disposition. Tr., p. 27 - 28. Accord *United States v. Abdel*

*Sattar*, 2002 WL 1836755, *6 (S.D.N.Y. 2002) (Koeltl, J.) ("a bare fear of surveillance" of

attorney-client communications without more is insufficient to interfere with Sixth

Amendment rights). Because defendant's right to counsel remains unabridged, "courts should

be particularly conscious of the measure of judicial deference owed to corrections officials

in gauging the validity of the regulation." *Turner*, 482 U.S. at 90 (citations and internal

quotations omitted).

The third factor considered under *Turner* is the impact that defendant's desired

accommodation would have on guards, other inmates, and prison resources. *Turner*, 482 U.S.

at 90. The requested "accommodation" would consist of allowing defense counsel access to

the defendant without any representations that defense counsel would abide by the

overarching protection provided by the SAMs – that defendant cannot communicate with or

direct his followers to engage in other acts of violence. This poses a significant potential risk

to the proper administration of justice, a risk that can be minimized by counsel's written

agreement to abide by the SAMs. *See United States v. Felipe*, 148 F.3d 101, 110 (2nd Cir.

---

[8](...continued)
requirement imposed by the SAMs. But, counsel's dissatisfaction or inconvenience regarding the
nature of his visit with defendant does not create a Sixth Amendment violation for the defendant.

1998) (goal of preventing an inmate from directing other acts of violence "is unquestionably a legitimate penological interest").

The fourth factor considered under *Turner* is whether there are ready alternatives to the proposed penalogical regulation. *Turner*, 482 U.S. at 90. Clearly, there are ready alternatives to ensure that defense counsel do not pass on (coded) orders or directions from defendant to his followers. However, the alternatives would require a greater intrusion on defense counsel's practices than simply requiring the execution of the attorney affirmation. The existence of more burdensome and complicated alternatives supports the validity of the SAMs. *Compare Turner*, 482 U.S. at 90 (noting that the existence of "easy alternatives" suggests the proposed regulation may not be valid).

Considering the *Turner* factors, it is apparent that the attorney affirmation is a valid attempt by the government to further a "legitimate security interest." *Turner*, 482 U.S. at 91. Therefore, assuming *arguendo* the attorney affirmation is deemed to affect defendant's right to counsel, the affirmation is nonetheless valid under a *Turner* analysis.

### THE SAMs DOES NOT AFFECT DEFENDANT'S RIGHT TO COUNSEL

The defendant argues that the SAMs violate his Sixth Amendment right to counsel. Defendant's Motion, pp. 10 - 11. Defendant makes broad, unsupported statements on this point. For example, defendant asserts "the Attorney General and government have, by way of requiring attorney affirmations, effectively precluded all privileged communications between counsel and Defendant. The Sixth Amendment implications ought to be obvious in

-11-

such a case . . ." *Id.*, 11. Defendant further argues that "[w]hile courts continue to recognize that, 'utmost candor between an attorney and client is essential to effective assistance of counsel,' the Attorney General apparently does not agree . . ." *Id.*

The deficiencies in defendant's argument are glaringly apparent. First, defendant offers absolutely no explanation for his proposition that the attorney affirmation requirement "effectively precluded all privileged communications between counsel and Defendant." How is the attorney affirmation requirement qualitatively different from other regulations the Bureau of Prisons enforces? For example, all visitors at the MCC - Chicago must sign a document declaring that the visitor does not possess certain listed contraband and other controlled items (e.g. drugs, weapons, cell phones, etc.). If a defense attorney chose not to sign that document and was thus denied access to his or her client, the attorney could not legitimately argue that the government has "effectively precluded all privileged communications" by requiring a signature to a document that he or she would prefer not to sign. To credit defendant's argument would invite federal courts to "become the primary arbiters of what constitutes the best solution to every administrative problem," an approach the Supreme Court has specifically rejected. *Turner*, 482 U.S. at 89.

Additionally, defendant's position that the attorney affirmation impinges on the confidentiality of attorney-client communications is simply not true. The attorney affirmation does not erode the confidentiality of communications in any sense. To the contrary, as the SAMs specifically limit repetition of defendant's communications (unless made in preparation

-12-

for defendant's defense), the level of candor and confidence in the attorney-client relationship should presumably be heightened because defendant would have added assurances that the communication would remain confidential.

## THE ATTORNEY GENERAL HAS THE INHERENT AUTHORITY TO REQUIRE THE EXECUTION OF THE ATTORNEY AFFIRMATIONS

Defendant expends a great deal of energy discussing the Attorney General's authority to require the attorney affirmation. Defendant's argument can be disposed of in short order. First, 28 C.F.R. § 501.3 (the administrative authority providing for the implementation of SAMs) provides that upon direction of the Attorney General, the Director, Bureau of Prisons, may authorize a Warden "to implement special administrative measures that *are reasonably necessary* to protect persons against the risk of death or serious bodily injury." 28 C.F.R. § 501.3(a) (emphasis added). The C.F.R. goes on to list what "special administrative measures ordinarily may include." *Id.* The attorney affirmation fits comfortably within the category of "special administrative measures that are reasonably necessary to protect persons against the risk of death or serious bodily injury." Additionally, the authority to require the attorney affirmation is a necessary means of implementing the C.F.R. Contrary to defendant's position, the Attorney General, through the discretionary act of the Director, Bureau of Prisons, has not exceeded either his delegated authority, or the scope of the applicable C.F.R.

Moreover, as the Seventh Circuit discussed in *Falcon v. United States Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995), a pretrial detainee dissatisfied with his conditions of confinement as they relate to his right to counsel should seek redress under 18 U.S.C.

§ 3142(i). As explained *supra*, the attorney affirmation requirement in no way interferes with those rights enumerated under § 3142(i). Because the SAMs completely comply with the provisions of § 3142(i), this Court's inquiry should be satisfied under the dictates of *Falcon*. *See United States v. Arnout*, 2002 WL 31744654, *1 (2002) (Conlon, J.).

## CONCLUSION

For those reasons stated above, the government respectfully requests that this Court deny defendant's motion to enforce Judge Rodovich's order as moot, and further deny defendant's motion to enjoin the government from requiring the execution of an attorney affirmation.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: _M. David Weisman_

M. David Weisman
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-2119

-14-