**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 CR 11 |
| | ) | Judge James T. Moody |
| MATTHEW HALE, | ) | |
| | ) | |
| Defendant. | ) | |

**FILED**

**MAY 2 3 2003**

**MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS COUNT ONE OF THE INDICTMENT OR FOR
A CHANGE OF VENUE TO THE CENTRAL DISTRICT OF ILLINOIS**

Defendant, **MATTHEW HALE**, by and through his attorneys, **THOMAS ANTHONY DURKIN** and **PATRICK W. BLEGEN,** respectfully submits the following Memorandum or Law in Support of his Motion to Dismiss Count One of the Indictment or for a Change of Venue, filed contemporaneously herewith.

### I.     Introduction

Because the government quite simply has no evidence that Mr. Hale violated 18 U.S.C. §373 in the Northern District, Defendant submits that venue for Count One is not proper here. Venue is a requirement of constitutional dimension, and the government may not prosecute a defendant in a particular venue unless there is sufficient evidence to show that the defendant's criminal conduct occurred in that district. For example, the Sixth Amendment ensures that a defendant will be tried "by an impartial jury of the State and district where the crime shall have been committed . . . ." *See*, U.S. Const. Amend. VI. Article III, Section 2 of the Constitution similarly provides that "[t]rial shall be held in the State where the said Crimes shall have been committed." *See*, U.S. Const. Article III, Sec. 2, Par. 3. Rule 18 of the Federal Rules of

Criminal Procedure incorporates these constitutional requirements as well, indicating that "the prosecution shall be had in a district in which the offense was committed." Fed. R. Crim. P. 18.

Moreover, because of the constitutional implications of venue, one count of an indictment lacking proper venue cannot be saved simply because the indictment contains other counts in which venue is proper. For example, Seventh Circuit has held that where "a defendant is charged in more than one count, venue must be proper with respect to each count." *United States v. Tingle*, 183 F.3d 719, 726 (7th Cir. 1999) (finding that venue was improper for a drug distribution count because the drug sale took place in a different district than the trial district). It is irrelevant in this challenge to the venue of Count One, therefore, to that venue may be proper in this instance for Count Two.[1]

## II. The *Locus Delicti* of the Charged Crime Determines Venue

With regard to criminal statutes which do not contain a venue provision, proper venue for the charged crime must be determined by the place of the offense; *i.e.*, the *locus delicti*.[2] And, the Supreme Court has long ago indicated and maintained that the "*locus delicti* must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Anderson*, 328 U.S. 699, 703 (1946). The Seventh Circuit in *United States v. Tingle* has explained that in order to determine venue, "we examine the key verbs in the statute defining the criminal offense to find the scope of the relevant conduct." *Tingle*, 183 F.3d

---

[1] In Count Two of the Indictment, the government has charged a violation of 18 U.S.C. §1503(a), "influencing or injuring officer or juror generally." Pursuant to §1503(i), prosecution under this section as well as §1503 may be brought in the district of the affected proceeding or where the conduct occurred. *See*, 18 U.S.C. §1512(i). Notably, the solicitation statute, 18 U.S.C. §373, contains no such provision. Moreover, counsel's research has uncovered no cases holding that venue is proper for solicitation both where the solicitation occurred, and where the crime solicited was supposed to occur.

[2] Black's Law Dictionary defines *locus delicti* as, "the place of the offense[ the place wher an offense was committed." Black's Law Dictionary, 4th Edition.

2

at 726 (internal citations omitted). The *Tingle* panel further explained that "[a]ctions which are merely preparatory or prior to the crime . . . are not probative in determining venue." *Id.* (internal citations omitted).

A straightforward reading of the solicitation statute at issue here makes clear that the *locus delicti* of a §373 charge is the place where the soliciting, or similar acts, take place. The solicitation statute, 18 U.S.C. §373, reads in pertinent part as follows:

> Whoever, with intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, or threatened use of physical force against property or against the person of another in violation of the laws of the United States, and under circumstances strongly corroborative of that intent, *solicits, commands, induces, or otherwise endeavors* to persuade such other person to engage in such conduct . . . . 18 U.S.C. § 373(a) (2003). (emphasis added).

As is evident, the statute's key verbs, in fact its only verbs, deal with a defendant's soliciting, inducing, etc, and it is where those acts allegedly occurred which represent the proper venue. Notably, nothing in the statute, key verbs or otherwise, indicates that proper venue may be had at any location other than where the soliciting takes place. For example, the location of where the effects of the solicitation might be felt; *i.e.*, the place where the crime of violence is supposed to take place, is not found in the statute. As such, there can be no argument that the Northern District is a place of proper venue because that is where Judge Lefkow is located.

This conclusion is buttressed by case law as well. The Fourth Circuit, in *United States v. Bowens*, 224 F.3d 302 (4th Cir. 2000) has explained that courts must employ different venue analysis for statutes that have "effects" elements and ordinary statutes that address only "actions." *Id.* at 313. The court explained that most statutes, which define the crime solely by the defendants' actions, rather than the crime's effects, authorize venue only in the district where the defendant committed the criminal acts. While not specifically discussed in *Bowens*,

3

soliciting a crime of violence under 18 U.S.C. §373 is clearly a "typical" statute which addresses only actions.[3]

### III. The Indictment and Evidence Reveal a Lack of Venue in the Northern District

A review of Count One of the Indictment and the evidence also makes clear that the government does not have sufficient evidence to show that the alleged solicitation occurred in the Northern District of Illinois. The indictment notes that the headquarters of the World Church of the Creator is located in East Peoria, Illinois, and that Defendant is the leader or "Pontifex Maximus" of the church. East Peoria is located in the Central District of Illinois. The indictment goes on to discuss a law suit that was filed in the Northern District of Illinois as well as the decisions of Judge Lefkow, a Judge of the Northern District, in that lawsuit. While the location of the civil case may be relevant to the government's story of the alleged crime, and possibly to an alleged motive, it certainly nothing to do with the elements of a violation of § 373, or the "key verbs" of such a charge. In fact, and as argued in Defendant's Motion to Strike Surplusage, filed contemporaneously herewith, the majority of the language in Count One amounts to non-essential surplusage.

---

[3] *Bowens* involved harboring a fugitive in violation of 18 U.S.C. §1071. While the court admitted that such a charge contained both "actions" and "effects" language, because of the constitutional ramifications of venue the court refused to expand venue to the place from which the harbored individual was a fugitive. *Bowens*, 224 F.3d at 313-314.

Count One's actual charging language is located in paragraph two which states that:

> From on or about November 29, 2002 through at least on or about December 17, 2002, in the Northern District of Illinois, Eastern Division, and elsewhere,
>
> MATTHEW HALE
>
> with the intent that another person engage in conduct constituting a felony that has as an element the use, attempted use, and threatened use of physical force against the person of another – – namely, the forcible assault upon, and the murder of, United States District Judge Joan Humphrey Lefkow, in violation of Title 18, United States Code, Sections 111(a)(1) and 1114 — and under circumstances strongly corroborative of that intent, did solicit, command, induce, and otherwise endeavor to persuade that other person to engage in such conduct.

Aside from the bare assertion that the offense was committed in the Northern District "and elsewhere," nothing in that paragraph reveals that venue is proper in the Northern District.

The evidence similarly does not establish venue in the Northern District. The indictment charges that the solicitation took place "[f]rom on or about November 29, 2002 through at least on or about December 17, 2002." During that period of time the confidential informant visited Defendant on two occasions at his home in East Peoria. It is these two recorded conversations, on December 5th and December 17th, 2002, that the government relies on to make their case of solicitation. Because both took place in East Peoria, the Central District is the place of proper venue.

## IV. Defendant's E-Mails to the Confidential Informant do not Provide Venue in the Northern District.

It appears that the only argument the government can raise in an attempt to preserve venue in the Northern District is to rely on e-mails sent by Defendant to the confidential informant on November 29, 2002, and December 4, 2002. This argument is dispatched rather easily.

First and foremost, an e-mail, unlike a telephone call or a piece of mail, is not directed to

5

any specific location. Rather, e-mails are sent through servers and can be downloaded and read at any location at which an individual has access to a computer and the internet. Permitting the government to rely on an e-mail for purposes of venue in a criminal case would be a dramatic extension of the law; and, in a case involving an informant, would permit the government to forum-shop by simply selecting the District in which to download and read the e-mail.

Moreover, the two e-mails upon which the government appears to rely for venue, an e-mail of November 29, 2002, and an e-mail of December 4, 2002, clearly do not solicit the assault or murder of a federal judge; and, at most, can be seen as "[a]ctions which are merely preparatory or prior to the crime," and are, therefore, "not probative in determining venue." *See, Tingle,* 183 F.3d at 726 (internal citations omitted). The November 29th e-mail, attached hereto as Exhibit A, is a preview of an article which Defendant planned on publishing in an internet newsletter. This e-mail was sent not just to the confidential informant's e-mail address, but to twenty-six others — a fact which clearly belies that this e-mail was designed or intended to solicit the informant to assault or murder a federal judge. It should be clear, as well, that neither the informant nor the agents working with the informant considered this e-mail to be a solicitation because the informant did not respond in any way.

The December 4, 2002, e-mail was sent to the confidential informant's address and requested that he find out the home addresses of Judge Lefkow as well as the lawyers representing the plaintiff in the civil trademark case. A copy of this e-mail is attached hereto as Exhibit B. That this e-mail can only be seen as "preparatory," at best, is made clear by the confidential informant's response to the e-mail. He does not respond that he will assault or kill

6

the judge or the lawyers.[4]  Rather, on December 5, 2002, the informant travels to East Peoria to meet with Defendant and record their conversation.  The informant's statements regarding the e-mail are particularly telling:

| | |
|---|---|
| CW | Well I got your e-mail about the Jew judge. . . . |
| HALE | Right. |
| CW | . . .you wanting his address and all his rats.  Ah. . . |
| HALE | That information. . .yes. .  for educational purposes and for whatever reason you wish it to  be. |
| CW | Are you gonna. . . .I'm workin on it.  I, I got a way of getting it.  Ah, when we get it, we gonna exterminate the rat? |

Clearly, the e-mail was merely preparatory, at best.  Had it been more than that, the informant would not have needed travel to East Peoria to ask, "[a]h, when we get it, we gonna exterminate that rat?"[5]

### V.     Cocnlusion

Defendant submits that venue for Count One of the indictment is not proper in the Northern District of Illinois.  Defendant requests, therefore, that the Court dismiss Count One; or, in the alternative, transfer that count for trial in the Central District.

---

[4]Nor, notably, is Defendant arrested after the informant received this e-mail.

[5]It cannot even be said that the e-mail was designed to prod the informant to come to East Peoria to talk about violence.  When the informant first appears on December 5th, Defendant's response is, "Rahowa.  I wish you'd give me notice when you come down brother.  It's good to see you of course . . . I just you know . ."

Respectfully submitted,

THOMAS ANTHONY DURKIN,

PATRICK W. BLEGEN, Attorneys for
Defendant.

**DURKIN & ROBERTS**
53 West Jackson Boulevard, Suite 615
Chicago, Illinois 60604
(312) 922-8980

8

# See Case

# File For

# Exhibits