IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
DEC 23 2003
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 CR 11 |
| | ) | Judge James T. Moody |
| MATTHEW HALE, | ) | |
| | ) | |
| Defendant. | ) | |

### NOTICE OF FILING

**TO:** **By Hand Delivery**
M. David Weisman
Victoria Peters
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

**PLEASE TAKE NOTICE** that on the 23rd day of December, 2003, the undesigned filed or caused to be filed with the Clerk of the District Court for the Northern District of Illinois, at Chicago, Illinois, the foregoing Motion to Prohibit Special Administrative Measures, a copy of which is hereby served upon you.

Respectfully submitted,

/s/ Patrick W. Blegen

PATRICK W. BLEGEN, One of the
Attorneys for Defendant.

**DURKIN & ROBERTS**
53 West Jackson Boulevard, Suite 615
Chicago, Illinois 60604
(312) 922-8980

## CERTIFICATE OF SERVICE

**PATRICK W. BLEGEN**, attorney at law, hereby certifies that on December 23, 2003, he served, or caused to be served, the foregoing pleading on the following attorneys of record by hand delivery:

M. David Weisman
Victoria Peters
Assistant United States Attorneys
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604

PATRICK W. BLEGEN

F I L E D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**F I L E D**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | DEC 2 3 2003 |
| Plaintiff, | ) | **MICHAEL W. DOBBINS** |
| | ) | **CLERK, U.S. DISTRICT COURT** |
| v. | ) No. 03 CR 11 | |
| | ) Judge James T. Moody | |
| MATTHEW HALE, | ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTION TO PROHIBIT SPECIAL ADMINISTRATIVE MEASURES

Defendant, **MATTHEW HALE**, by his attorneys, **THOMAS ANTHONY DURKIN** and **PATRICK W. BLEGEN**, pursuant to the Separation of Powers established by Articles I, II and III of the Constitution of the United States, as well as the Free Speech, Due Process, and Effective Assistance of Counsel clauses of the First, Fifth and Sixth Amendments to the Constitution of the United States, respectfully moves this Court for entry of its order prohibiting the Attorney General from continuing to impose Special Administrative Measures.

**I.    Introduction**

As this Court is by now well aware, Defendant has been detained at the Metropolitan Correctional Center in Chicago since his arrest on January 8, 2003; and, since March 3, 2003, he has been detained under Special Administrative Measures (SAMs) imposed on the Director of the Bureau of Prisons by Attorney General Ashcroft.[1] As far as counsel can glean, Defendant is the first pre-trial detainee, not alleged to be an international terrorist, upon whom SAMs have been imposed. For a variety of reasons, Defendant submits that this Court ought to prohibit the

---

[1] Counsel has previously provided the Court a copy of the SAMs under seal as part of their Emergency Motion to Enforce Magistrate Judge Rodovich's Detention Order Of February 12, 2003, Regarding Attorney Consultation, which was filed on March 11, 2003.



Attorney General from continuing to impose SAMs in ths case.

## II. The SAMs Violate Hale's Sixth Amendment Right to Counsel

The SAMs impair Hale's Sixth Amendment right to counsel by placing numerous restrictions on the attorney-client relationship including restrictions regarding counsel's in-person and telephone communications with Hale, as well as restrictions regarding what documents counsel may provide to Hale.[2] For example, with regard to in-person communications, the SAMs provide that attorney/client meetings may be contact or non-contact at the discretion of the government. (SAMs, p. 4) Counsel may not repeat the contents of their conversations with Hale to third parties unless "for the sole purpose of preparing the inmate's defense and not for any other reason." Nor can counsel's staff make such decisions, as the SAM's require that counsel, not a staff member, determine whether communication to a third party is made solely for purposes of the defense. *Id.* In the event counsel desires other individuals, such as experts, investigators, or other staff to meet with Hale, such individuals must be pre-cleared by the government. With regard to legal telephone calls, all phone calls from Hale require that one of his attorneys be present and participate in the call. *Id.*, p. 5. The SAMs further instruct that counsel will not allow non-pre-cleared persons to "take part in and/or listen to or overhear any communications with the inmate." *Id.* The SAMs also indicate that no telephone calls "will be patched through, or in any manner forwarded or transmitted to a third party;" or "shall be divulged in any manner to a third party."[3] *Id.*, p. 6. With regard to documents, counsel may

---

[2] The SAMs "Attorney/Client Provisions" encompass more than four pages of the SAMs fourteen pages.

[3] Although the SAMs do not make it clear, presumably Hale's statements by telephone can be divulged for the sole purpose of preparing his defense.

2

provide court papers and/or materials prepared by counsel, but may not provide "inflammatory materials or materials inciting to violence or military training materials"[4] unless pre-cleared by the government. *Id.*

Defendant submits that such restrictions violate his Sixth Amendment right to counsel. As well, due to the threat of criminal prosecution for violating any given provision, the SAMs also seriously chill zealous representation, further impugning the Sixth Amendment. The SAMs' limitation on counsel's communications with third parties severely restricts counsel's ability to freely exchange information with experts, investigators, and witnesses in order to prepare an adequate defense. The limitations placed on what materials may be provided to Hale also have a strong chilling effect on the free flow of information from counsel to Hale. Furthermore, the pre-clearance required for witnesses and experts themselves who seek to meet with Hale can disrupt the preparation of the defense, and would also provide information to the government to which they would otherwise not be entitled.[5]

Hale, of course, has the right to freely communicate with his chosen counsel. *See, Geders v. United States*, 425 U.S. 80, 91 (1976) (Marshall, J., concurring) ("the general principles adopted by the Court today are fully applicable to the analysis of *any* order barring communication between a defendant and his attorney . . . .") (emphasis in original). And, where government interference deprives a defendant of the right to effective assistance of counsel, no prejudice need be shown to obtain a reversal. *United States v. Cronin*, 466 U.S. 648 (1984). As

---

[4] No definition of "inflammatory materials" is provided.

[5] Even though counsel have now been appointed under the Criminal Justice Act, they can nevertheless apply for expert or investigative services without the government's knowledge, or pre-approval.

3

well, "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not . . . the defendant need not show that the proceedings were affected" to obtain a new trial. *Bell v. Cone*, 535 U.S. 685 (2002).

Moreover, while the restrictions placed on Hale by the SAMs do not completely bar attorney/client communications, due to the length of Hale's detention under the SAMs, and the multitude of requirements, the imposition of the SAMs in this instance have a far more dramatic impact on the Sixth Amendment than did an overnight ban on attorney/client communications that was found to be unconstitutional in *Geders, supra*. Here, unlike *Geders*, the interference with the right to counsel is indefinite, raises the specter of counsel being charged with a crime, and is taking place during the time when Hale can be of the most assistance in his own defense.[6]

Lastly, the chilling effect on attorney/client communications created by the imposition of the SAMs cannot be overstated. While courts continue to recognize that, "utmost candor between an attorney and client is essential to effective assistance of counsel," it cannot be seriously argued that the SAMs imposed here do not have a significant impact on attorney/client candor. *See also, Greater Newburyport Clamshell Alliance v. Public Service Commission of New Hampshire*, 838 F.2d 13, 21 (1st Cir.1988). *See also, Mudd v. United States*, 798 F.2d 1509 (D.C. Cir. 1986) ("[A]n order [limited to certain subjects] can have a chilling effect on cautious attorneys, who might avoid [discussion on non-restricted] matters for fear of violating the court's directive."); *United States v. Eniola*, 893 F.2d 383 (D.C. Cir. 1990) (finding a Sixth Amendment violation where court did not permit counsel to discuss with Defendant a potential

---

[6] The communication ban in *Geders* took place after the defendant's direct testimony, but before cross-examination. Aside from improperly obtaining coaching from his attorney, there was little Geders could do at that time to help his own defense. That is certainly not the case here, however.

4

witness' status as a government informant).

As such, Defendant submits that the Court ought to prohibit the Attorney General from continuing to impose SAMs on Hale as violative of his Sixth Amendment right to counsel.

### III. The Attorney General Lacks Authority to Apply the SAMs to Hale's Counsel

The impact of the SAMs on Hale's Sixth Amendment rights is all the more glaring when one considers that the SAMs regulate attorney conduct outside of the walls of the MCC, despite the Attorney General's obvious lack of authority over attorneys in the first instance. On its face the CFR which authorizes SAMs, 28 CFR §501.3, permits only the imposition of administrative measures upon *inmates*, not upon attorneys, their staff, or anyone else. *See*, 28 CFR §0.5 (Attorney General has the authority to "[s]upervise and direct the administration and operation of the Department of Justice, including . . . U.S. Marshals, which are within the Department of Justice."); 28 CFR §1 (making clear that the Bureau of Prisons is a unit of the Department of Justice and that it falls under the authority of the Attorney General); 28 CFR §0.96 (authorizing the Attorney General to establish rules governing the discipline, treatment, and care of inmates in Bureau of Prisons custody); *and* 28 CFR 500.1(c) (defining inmate to mean, among other things, persons charged with offenses against the United States who are in the custody of the Bureau of Prisons). Consistent with that authority, the CFR refers only to the "affected inmate," when, for example, providing for a notice requirement. *See*, 28 CFR 501.3. Moreover, the Federal Register notice announcing the final rule of the original form of the SAMs in 1997 lists only "[p]risoners" under the section entitled "[l]ist of subjects in 28 CFR part 501." 62 FR 33730. Likewise, the Federal Register announcing changes to the CFR on October 31, 2001, states that "[t]he existing §§501.2 and 501.3 cover only inmates in the custody of the Bureau of Prisons."

5

66 FR 55062. That even the CFR as amended is limited only to inmates, or individuals in custody, is made clear by the fact that the amendment seeks only to encompass "instances when a person is held in the custody of other officials under the authority of the Attorney General (for example, the Director of the United States Marshals Service or the Commissioner of the Immigration and Naturalization Service)." *Id.*

Despite the fact that the CFR provides authority only over *inmates*, the Attorney General has apparently broadly construed his own power to include the activities not just of pre-trial detainees, but of their chosen counsel as well. *See*, SAMs', pp. 3-7 (restricting counsel's ability to relate an inmate's conversations, directing counsel to instruct their staff as to the terms of the SAMs, and directing counsel as to what documents they may provide to the inmate.) Notably, and quite amazingly, many of the restrictions on counsel, and directions of their activity, relate to conduct outside of the Bureau of Prisons and in counsel's own office. This unauthorized assertion of power by the executive branch, when combined with the threat of prosecution, is not only disturbing, but clearly conflicts with the constitutional structure of separated and delegated powers. Chief Judge William G. Young of the United States District Court for the District of Massachusetts acknowledged this danger in *United States v. Reid*, 214 F. Supp. 2d 84, 96, n.8 (D. Mass. 2002), noting that the SAMS potentially raise "serious constitutional issues" by criminalizing attorney conduct when "only the Congress can enact federal criminal statutes."

In light of the SAM's restrictions on the conduct of counsel, despite any authority to regulate attorneys, Defendant submits that the SAMs imposed in this case ought to be prohibited as an unconstitutional intrusion into legislative matters by the executive.

6

## IV. The SAMs Violate the First Amendment Rights of Hale and Counsel

The SAMs violate the First Amendment rights of Hale and counsel by "chilling" and in some cases entirely forbidding protected speech. Hale's ability to communicate with others is limited to his attorneys and immediate family members, and he is entirely prohibited from communication with news media. (SAMs, pp. 9-12) Counsel, meanwhile, are not permitted to disclose the substance of Hale's communications, unless for the sole purpose of preparing Hale's defense.

In *United States v. Salameh*, 992 F.2d 445 (2d Cir. 1993), the Second Circuit held that an order barring defense counsel from making public statements regarding a pending case was a prior restraint that carried "a heavy presumption against its constitutional validity." *Id.* at 446. Here, the SAMs constitute a similar prior restraint both on Hale and counsel by preventing whole categories of protected speech; *e.g.*, public advocacy, and the presentation of "inflammatory" materials, under the threat of criminal prosecution. Nor can the threat of prosecution be considered insubstantial, as the government has demonstrated a willingness to prosecute attorneys who violate the SAMs.[7]

The SAMs are also unconstitutional because they restrict attorney speech for a purpose other than ensuring the right to a fair trial. The *Salameh* court noted that any "limitations on attorney speech should be no broader than necessary to *protect the integrity of the judicial system and the defendant's right to a fair trial*." Id. at 446, 447 (Emphasis added). And, the Supreme Court has made clear that the state may only limit attorney speech regarding pending cases if it

---

[7] *See, Reid, supra*, at 94-95 (taking judicial notice that the government had indicted attorney Lynne Stewart, Esq., for violating SAMs).

7

has "a substantial likelihood of materially prejudicing" the case. *Gentile*, 501 U.S. 1030, 1075 (1991) (voiding a Nevada law limiting attorney speech on vagueness grounds). The SAMs imposed on Hale and counsel are an unconstitutional restriction on attorney speech because they are not intended to prevent prejudice to the trial.

Even if the government were permitted to restrict attorney speech for purposes other than ensuring fair trials, the SAMs at issue here would still be unconstitutional on over-breadth grounds. More narrowly drawn SAMs could achieve the ends of preventing violence without burdening the First Amendment rights of Hale and his attorneys. For example, Hale could be provided access to the press under restrictions similar to Hale's access to his parents and others; *i.e.*, the government's recording of his conversations and reading of his outgoing and incoming mail. The Supreme Court confronted an analogous issue in *Erzonzik v. Jacksonville*, 422 U.S. 205 (1975), when it found an ordinance restricting films with nudity in drive-in theaters to be overly broad. *Id.* at 216-17. The Court stated:

> [T]he deterrent effect of this ordinance is both real and substantial. Since it applies specifically to all persons employed by or connected with drive-in theaters, the owners and operators of these theaters are faced with an unwelcome choice: to avoid prosecution of themselves and their employee they must either restrict their movie offerings or construct adequate protective fencing which may be extremely expensive or even physically impracticable. *Id.*

Similarly, the SAMs have a real and substantial effect of over-deterring protected attorney speech. The SAMs' ever-present threat of criminal prosecution, combined with the vague limits on attorney speech such as the ban on "inflammatory" materials, constitute a substantially overbroad restriction on First Amendment rights. In sum, the SAMs restrict protected attorney speech and are unconstitutional because they are prior restraints, do not ensure a fair trial, and are overly broad.

8

## V. The SAMs Violate the Due Process Rights of Hale's Counsel to Practice Their Profession

The SAMs violate the due process rights of Hale's counsel by interfering with their protected liberty and property interests in practicing their profession. *See, e.g., In re Ruffalo*, 390 U.S. 544 (1968) (*per curiam*). The SAMs go far beyond current law and ethics governing the conduct of attorneys by severely limiting attorney conduct and speech. These limits also carry the threat of criminal prosecution which threatens to inhibit counsel's zealous representation of Hale. In *Ex Parte Garland*, 71 U.S. 333 (1866), the Supreme Court noted that attorneys have a protected interest in practicing their profession and struck down a law requiring attorneys to swear a loyalty oath before being admitted to practice in federal court. *Id.* at 379. Justice Field, for the Court, emphasized that the right of an attorney to practice his profession "can only be deprived by the judgment of the court, for moral or professional delinquency." *Id.* The Justice Department may not deprive Hale's counsel of their right to represent their client and practice their profession by conditioning that right on counsel's relinquishing of the right to freedom of speech. *Lefkowitz v. Cunningham*, 431 U.S. 801, 807-08 (1977), *citing, Simmons v. United States*, 390 U.S. 377, 394 (1968). Unfortunately, by restricting what counsel may say, the SAMs do just that. The SAMs unconstitutionally force Hale's attorneys to choose between their free speech rights and their protected interest in practicing their profession.

## VI. Conclusion

WHEREFORE, Defendant respectfully requests that the Court enter its order prohibiting the Attorney General from continuing to impose special administrative measures.

Respectfully submitted,

*Thomas A. Durkin / by JLG*
THOMAS ANTHONY DURKIN

*Patrick W. Blegen*
PATRICK W. BLEGEN, Attorneys for Defendant.

**DURKIN & ROBERTS**
53 West Jackson Boulevard, Suite 615
Chicago, Illinois 60604
(312) 922-8980