UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 03 CR 011 |
| v. | ) | |
| | ) | Judge James T. Moody |
| MATTHEW HALE | ) | (sitting by designation) |
| | ) | |

**DOCKETED**
FEB 1 9 2004

**FILED**
FEB 1 8 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

NOTICE OF FILING AND CERTIFICATE OF SERVICE

TO: Thomas Durkin
Patrick Blegen
Durkin & Roberts
53 W. Jackson Blvd., Suite 615
Chicago, IL 60604

PLEASE TAKE NOTICE that on February 18, 2004, the undersigned filed the following documents in the above captioned case:

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO PROHIBIT SPECIAL ADMINISTRATIVE MEASURES**

*[signature]*
M. David Weisman
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

It is hereby certified that service of this attached filing has been made on the above-noted counsel via hand delivery this 18th day of February, 2004.

BY: *[signature]*
M. DAVID WEISMAN
Assistant United States Attorney

U.S. DISTRICT COURT
04 FEB 18 PM 1:34
REC'D FOR DOCKETING
9-03

110

| | | |
|---|---|---|
| UNITED STATES | ) | 03 CR 11 |
| | ) | |
| v. | ) | Judge James T. Moody |
| | ) | |
| MATTHEW HALE | ) | |

FILED
FEB 1 8 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO PROHIBIT SPECIAL ADMINISTRATIVE MEASURES

The UNITED STATES, through its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, responds as follows to defendant's motion to prohibit special administrative measures:

### BACKGROUND

Since March 3, 2003, the defendant has been detained at the Metropolitan Correctional Center - Chicago under Special Administrative Measures (hereinafter "SAM" or "SAMs"). The SAMs govern defendant's contact with his counsel as well as contact with family members. In general, the SAMs institute measures that are intended to limit defendant's ability to send or receive information that could be used to solicit crimes of violence. To accomplish this goal, the SAMs provide for monitoring of social visits between defendant and family members, the monitoring of social telephone calls, and the monitoring of non-legal mail sent or received by the defendant. Additionally, there are other limitations placed on defendant's access to other inmates and other means of communicating with the associates other than family members.

The SAMs place virtually no limitation on defendant's access to privileged communication with his counsel. Indeed, the SAM sets out a cadre of affirmative rights of access to counsel including the right to privileged conversations; the right to have simultaneous legal visitors; the right to legally-privileged telephone calls; the right of defense counsel's staff to participate in conversations with defendant; the right of the defendant to initiate legally-privileged telephone calls; the right to receive legal documents from defense counsel; and the right of defense counsel to disseminate information provide by the defendant to third parties provided that such dissemination is related to the preparation of the defense of the defendant.[1] Moreover, the SAMs provide that defendant's conversations with his counsel will remain privileged. Various provisions of the SAMs explicitly state that the provision does "not allow monitoring of attorney/client privileged communications."

The SAMs does require that prior to having privileged conversations with defendant, defense counsel must sign an affirmation (hereinafter "attorney affirmation") indicating that they are aware of the SAM's restrictions and that "they will not forward third-party messages to or from the inmate." Since the issuance of the SAMs, this Court has determined that the

---

[1] In enumerating these rights, the government does not mean to suggest that providing such rights to defendant is a magnanimous gesture. The government recognizes the importance of defendant's right to counsel, and the concomitant need for defense counsel to use the information provided by the defendant to fully explore and develop a defense in this case. The SAMs honor the defendant's right to counsel and counsel's right to effectively use information provided. The itemization of these provisions of the SAMs is intended to illustrate that the SAMs provide defendant with meaningful access to his counsel.

attorney affirmation provision is not enforceable, and has allowed defense counsel to visit with the defendant *without* requiring defense counsel to execute the Attorney Affirmation.

## *SIXTH AMENDMENT RIGHT TO COUNSEL*

Defendant's first argument is that the SAMs "impair Hale's Sixth Amendment right to counsel by placing numerous restrictions on the attorney-client relationship." *See* Defendant's Motion, p. 2. In support of this argument, the defendant reviews the breadth of restrictions enumerated in the SAMs. However, the defendant fails to explain how any of these restrictions impinge on his Sixth Amendment right to counsel.

For example, the defendant argues that "[t]he SAMs' limitation on counsel's communications with third parties severely restricts counsel's ability to freely exchange information with experts, investigators, and witnesses in order to prepare an adequate defense." Yet, the defendant acknowledges that the SAMs allow counsel to "repeat the contents of the contents of their conversations with Hale to third parties [provided that the communication is] 'for the sole purpose of preparing the inmate's defense and not for any other reason.'" *See* Defendant's Motion, p. 2. It is difficult to discern how the SAMs qualitatively impinges on defendant's Sixth Amendment rights in this regard.

As another example, the defendant argues that "the pre-clearance required for witnesses and experts themselves who seek to meet with Hale *can* disrupt the preparation of the defense, and *would* also provide information to the government to which they would otherwise not be entitled." (Emphasis added.) The problem with this argument is that as the

defendant has noted, he has been held under the SAMs for almost one year. Yet, the defendant does not identify examples of where the preparation of the defense was *actually* disrupted, or the government *was provided* with information that it would not otherwise be entitled.[2] The defendant discusses these concerns in vague generalities, yet with almost a year's experience to reflect upon, the defendant is apparently unable to articulate any incident that exemplifies these concerns.

Finally, in a similar vein, the defendant makes broad allegations that the SAMs have created a chilling effect on the attorney/client relationship – "it cannot be seriously argued that the SAMs imposed here do not have a significant impact on attorney/client candor." *See* Defendant's Motion, p. 4. Yet the defendant fails to explain or amplify this statement. At the risk of appearing overly simplistic, the government simply fails to see the logic of this argument. The candor between client and attorney seems likely to improve because the confidentiality of the communications between the attorney and client are enhanced through the SAMs. The confidentiality between attorney and client is the bedrock of the attorney/client relationship. If such confidentiality is further ensured by the SAMs, the logical conclusion is that the level of candor would be increased not decreased.

---

[2] The undersigned is more than willing to accommodate a more expedited clearance process if one is needed. Similarly, if defense counsel believes that the government is gaining some unfair advantage through the pre-clearance process, the government is willing to establish some type of process to segregate information regarding potential witnesses from the prosecution team.

Defendant's broad, factually unsubstantiated claims regarding Sixth Amendment issues, are not a basis for this Court to modify the conditions of the SAMs.

## *ATTORNEY GENERAL HAS THE AUTHORITY TO APPLY THE SAMs TO DEFENSE COUNSEL*

The Attorney General's authority to apply certain restrictions regarding means of communication between the defendant and his counsel is inherent in the regulation authorizing the SAMs.

First, 28 C.F.R. § 501.3 (the administrative authority providing for the implementation of SAMs) provides that upon direction of the Attorney General, the Director, Bureau of Prisons, may authorize a Warden "to implement special administrative measures that *are reasonably necessary* to protect persons against the risk of death or serious bodily injury." 28 C.F.R. § 501.3(a) (emphasis added). The C.F.R. goes on to list what "special administrative measures ordinarily may include." *Id.* The SAMs enumeration of certain responsibilities that defense counsel is required to accept regarding communication between the defendant and counsel fits comfortably within the category of "special administrative measures that are reasonably necessary to protect persons against the risk of death or serious bodily injury." Contrary to defendant's position, the Attorney General, through the discretionary act of the Director, Bureau of Prisons, has not exceeded either his delegated authority, or the scope of the applicable C.F.R.

Moreover, as the Seventh Circuit discussed in *Falcon v. United States Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995), a pretrial detainee dissatisfied with his conditions

of confinement as they relate to his right to counsel should seek redress under 18 U.S.C. § 3142(i). Because the SAMs completely comply with the provisions of § 3142(i), this Court's inquiry should be satisfied under the dictates of *Falcon*. *See United States v. Arnout*, 2002 WL 31744654, *1 (2002) (Conlon, J.).

### *THE SAMs DOES NOT VIOLATE DEFENDANT'S OR COUNSEL'S FIRST AMENDMENT RIGHTS*

Defendant next contends that his and his counsel's First Amendment rights are infringed upon through the SAMs. Defendant expresses a particular concern regarding his ability to communicate with members of the press.

In *Saxbe v. the Washington Post*, 417 U.S. 843, the Supreme Court affirmed limitations established by the Bureau of Prisons regarding press access to inmates. In *Saxbe*, the Court found that as long as the press had access equal to the general public (or greater) than no First Amendment violation existed. "The proposition that the Constitution imposes upon government the affirmative duty to make available to journalists sources of information not available to members of the public generally finds no support in the words of the Constitution or in any decision of this Court." *Id.*, at 850. In the instant case, the press's access to the defendant is no less than the general public's access to the defendant. Thus, it is difficult to understand how the SAMs infringes on defendant's First Amendment rights. The government has established that the defendant poses a danger to the community, and the limitations contained in the SAMs are intended to provide certain protection to the public at large. *See Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) (pretrial detainees are not subject

-6-

to constitutional infringement if First Amendment restrictions are an incident of some other legitimate government interest).

As to the SAMs' restrictions on counsel, counsel's comments to the press are guided by Northern District of Illinois Local Rule 83.53.6, which sharply restricts those matters that defense counsel could publicly disclose. Defense counsel fail to explain how the SAMs is more restrictive than the LR 83.53.6. Moreover, early on in this litigation, defense counsel sought a change of venue based on pretrial publicity, alleging that the level of pretrial publicity afforded their client created an unfair atmosphere for their client. It is difficult to understand why defense counsel would want to communicate publicly about the case, given their concerns regarding the notoriety already surrounding this case.

For these same reasons, defense counsel's claim that their Due Process rights to practice their profession have been infringed upon by the SAMs is equally without merit. If limitations on commenting on pending litigation created a Due Process violation, then LR 83.53.6 and other similarly situated professional and ethical rules would run afoul of the First Amendment. Defendant has cited no case supporting this position.

## CONCLUSION

For those reasons stated above, the government respectfully requests that this Court deny defendant's motion to prohibit the Special Administrative Measures now in place.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: *M. David Weisman*

M. David Weisman
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-2119