Minute Order Form (06-97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James T. Moody | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 11 | **DATE** | 3/26/2004 |
| **CASE TITLE** | US vs. Matthew Hale | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER ORDER:** (1) Defendant's motion to dismiss Counts Two and Three of the indictment; request for additional discovery and for an evidentiary hearing (#74) is **DENIED.** (2) Defendant's motion to dismiss Count Three of the Third Superseding Indictment or for a change of venue to the Central District of Illinois (#100-1 and 100-2) is **DENIED.** (3) Defendant's motion to prohibit special administrative measures (#105) is **DENIED.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | Document Number |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | APR 06 2004 | |
| | Notified counsel by telephone. | | | date docketed | 128 |
| | Docketing to mail notices. | | | docketing deputy initials | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | | |
| SCT | courtroom deputy's initials | | | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 CR 11 |
| | ) | |
| MATTHEW HALE, | ) | |
| Defendant. | ) | |

O R D E R

Other than those raising evidentiary issues, this order is intended to address all

motions presently at issue in this case.

**MOTION TO DISMISS COUNTS TWO AND THREE OF THE INDICTMENT;
REQUEST FOR ADDITIONAL DISCOVERY & FOR AN EVIDENTIARY
HEARING[1]**

Simply stated, Hale argues that both his First and Fifth Amendment rights have

been violated by the government's use of a confidential informant, whom Hale

identifies as an individual named Tony Evola, to conduct its investigation in this case.

As Hale sees it:

> [A]ny reasonable person ought to be shocked at the conduct
> of the government and its informant in this case. The
> government implanted Evola into Defendant's church and
> left him there for over three and a half years. Evola
> attempted to insinuate himself into Hale's confidence and
> continually prodded, cajoled, argued, and otherwise
> attempted to convince Hale to commit crimes, against Judge
> Lefkow and others.

---

[1] This motion was initially denied because it was filed after the cut-off date set for
filing pretrial motions. After the trial date was changed, however, the court relieved
Hale from his forfeiture and advised that it would consider the merits of the motion.

Motion at 3. Hale supports his argument with selected portions of a transcript of a conversation between the informant and Hale that was secretly recorded.

As to the Fifth Amendment, Hale argues that the informant's constant badgering of Hale to commit crimes for such a lengthy period of time caused the government to be "overly involved in the creation of the crimes with which Hale is charged in Counts Two and Three" and "represents an effort to fabricate a crime solely to secure Hale's conviction, and therefore amounts to outrageous government misconduct."[2] Motion at 4, 6. Hale asserts that conversations between himself and the informant in which murder and mayhem was discussed "are all, *without exception, initiated by Evola*." Motion at 13-14 (emphasis in original.) As to the First Amendment, Hale argues that because implantation of a confidential informant into an organization, in this case his church's "inner circle," has a chilling effect on the exercise of the rights of free expression and association, the government must be required to demonstrate (primarily, through the additional discovery and evidentiary hearing that Hale requests) that its investigation was conducted in good faith, that is, not for the purpose of abridging First Amendment rights, and that the informant adhered to the scope of

---

[2] Hale provides specific examples, such as one involving a church member named Kenneth Dippold. Hale knew that Dippold was providing damaging testimony against the church in a civil suit. After Hale told the informant that he was "going to have to say no to this [the informant's scheme to kill Dippold]," the informant on several later occasions again raised the issue and argued that the scheme should be carried out.

2

the invitation extended to him to participate in the organization. Motion at 7-8. *See*

*United States v. Aguilar*, 883 F.2d 662 (9th Cir. 1989).

The government responds that Hale's characterization of the facts is largely

inaccurate. The government asserts that the evidence will show that the confidential

informant was recruited to join Hale's church by a church member. The informant then

contacted the FBI and agreed to attend a church meeting. At only the second meeting

the informant attended, he was approached by Hale and Hale himself asked the

informant to provide security at future church events. Thus, rather than being

implanted by the government, the informant was eagerly recruited by defendant Hale

and church members.[3]

In addition, the government puts the conversations on which Hale relies to

demonstrate outrageous governmental misconduct (pursuant to his theory that all

conversations involving violence were initiated by Evola) in their larger context. The

---

[3] Hale's Reply memorandum, discussed *infra* at p. 9 n. 9, asserts that FBI 302 reports put quite a different spin on this, and show that the FBI encouraged the informant to ingratiate himself with Hale. Nevertheless, as discussed in this order, Hale has not cited a case in this circuit where a criminal indictment has been dismissed because of an informant's conduct during the course of a criminal investigation. Even *United States v. Aguilar*, 883 F.2d 662 (9th Cir. 1989), on which Hale principally relies, recognizes that: "[A] fair reading of the invited informer cases reveals that their rationale inherently imposes a rather significant burden on first amendment free association rights. In approving this investigative technique, the Supreme Court unmistakably declared that persons have no expectation of privacy or confidentiality in their conversations and relations with other persons, no matter how secretive the setting. The Court has recognized that legitimate law enforcement interests require persons to take the risk that those with whom they associate may be government agents." *Id.* at 703.

government details the particulars of numerous conversations which began early in the relationship between Hale and the informant in which Hale unilaterally muses on violent themes, while always being careful to mention that he was only dreaming or speaking theoretically. For example, in a conversation on December 4, 2000, in which Hale spoke of his desire for his church to gain power over the federal government during which the informant said little (remained "virtually silent" as the government sees it), Hale remarked:

> I'd love it, God, here's all the enemies of our race. We just
> got 'em in single file against a wall. I just walk down, [gun
> shot sound] you know . . . . Yeah, every damn one of 'em
> you just have a field day. Hey, open your mouth, yeah, [gun
> shot sound].

Government's Response at 6.

Regarding the conversations Hale references involving church member Kenneth Dippold, the government notes that Hale omits to mention that, when he and the informant first discussed Dippold in December 2000, Hale stated:

> If somebody came to me and said, well, you know, well yeah
> I ah, I have the means to make sure that [Dippold] does not
> continue with this bullshit. I'd say hey, I don't want to know
> about it. I have nothing to do with it, you know that would
> be my position.

Government's Response at 7. In January, 2001, when the informant met with Hale and repeatedly urged him to provide Dippold's address, Hale responded: "I already mailed it to you . . . . Just for your information." Government's Response at 8. Hale then explained to the informant that if it "ever came back" that the informant had been there,

it was Hale's understanding that the informant was confessing to Hale as a minister, and so Hale would never have to reveal the content of any of their conversations. Government Response at 9.

The government urges that, while it is clear that Hale was reluctant to discuss Dippold, it is equally clear that the inference can be drawn that Hale wanted violence against Dippold to take place and that the informant's conduct, whether or not overzealous, had no bearing on Hale's willingness to allow violence to occur. Hale's later direction to the informant not to follow through on the plans only shows that Hale was in charge of the situation and (thought) that he could control the informant's conduct. The government contrasts this conduct with that involving the charges that Hale solicited the murder of United States District Judge Joan H. Lefkow, in which there is no indication that Hale ever directed the informant not to carry out his plan.

Assuming that the evidence at trial bears out the government's version of events,[4] the factual premise for Hale's arguments is thin: not in the sense that Hale's characterization of the events is an impossible way in which they could be seen, but in the sense that Hale's way is not the only way (indeed, in the court's estimation, not the more likely way), and thus does not paint a picture of outrageous governmental misconduct. But even were the court not to take issue with the factual underpinnings of

_____

[4] This comment does not indicate that the court has blindly accepted every assertion in the government's brief, and rejected those in Hale's. Many if not most of the factual details discussed are in transcript drafts (the parties have not yet agreed to the accuracy of the transcription) provided in support of the parties' positions.

Hale's argument, the Seventh Circuit has flatly rejected the defense of outrageous governmental misconduct on which Hale relies. *United States v. Sherman*, 268 F.3d 539, 549 (7th Cir. 2001); *United States v. Boyd*, 55 F.3d 239, 241 (7th Cir.1995).[5]

As the government observes, although Hale admits that this is the law in this circuit, he attempts to sidestep the matter by arguing the issue more as one of entrapment, *i.e.*, that the government fabricated the crime through the use of an overly-persistent confidential informant. Entrapment is a defense, and a matter for the jury to decide, assuming that Hale establishes a basis for the defense at trial. *United States v. Blassingame*, 197 F.3d 271, 279 (7th Cir. 1999); *United States v. Higham*, 98 F.3d 285, 290 (7th Cir.1996). In short, the court will not dismiss Counts Two and Three on the basis of any theory, however cast, that Hale's rights under the Fifth Amendment were violated by outrageous governmental misconduct.

As to the First Amendment, the legal basis for Hale's argument that the alleged violation of his (and, implicitly his church members') First Amendment rights justifies dismissal of Counts Two and Three is less than clear.[6] The cases Hale cites in support are either civil suits seeking damages or an injunction, *e.g.*, *Alliance to End Repression v.*

---

[5] The court notes that the facts in *Boyd*, where the district court found that the prosecutors had knowingly used perjured testimony and supplied prosecution witnesses with unlawful favors, appear far worse than the investigatory tactics employed by the government in the present case.

[6] Although Hale specifically states that the Counts Two and Three should be dismissed because of infringement of his First Amendment rights, in many ways his First Amendment argument reads more like one made as additional support for his claim of outrageous conduct in violation of the Fifth Amendment.

*City of Chicago*, 627 F.Supp. 1044, 1055 (N.D. Ill.,1985); *Jabara v. Kelley*, 476 F.Supp. 561 (E.D. Mi. 1979), or when criminal in nature recognize that the issue is one of a fourth amendment violation justifying possible suppression of the evidence gathered by the "invited informer." *United States v. Aguilar*, 883 F.2d 662, 697 (9th Cir. 1989). Hale has not cited a case where an indictment has been dismissed on the basis of a First Amendment violation.

Putting that flaw in the argument aside, and analyzing the present case pursuant to the Fourth Amendment approach taken in *Aguilar* (and further assuming *Aguilar* should be followed in this circuit), the court should inquire whether the government's investigation was conducted in bad faith, that is, for the purpose of abridging First Amendment rights, and second, whether the confidential informer that has been invited to join the defendant's organization has adhered to the scope of his invitation. *Aguilar*, 883 F.2d at 705. Hale's argument fails to demonstrate that either prong is met.

First, as the government points out, during the three-and-a-half year period during which the investigation was carried out, Hale has not shown that there was any restriction or impact on his First Amendment activities. During that time, he continued to hold and attend church meetings, and make public speeches and media appearances. The only support Hale provides is his speculation that the government's motivation for "placing" the informant in Hale's church was the Benjamin Smith shooting spree,[7] and

---

[7] As explained in prior orders, Smith was a church member who went on a cross-country shooting spree shortly after meeting with Hale.

7

assertion that by the time of the conduct charged in the indictment any good faith on that basis had "gone stale," resulting in Hale's counsel's belief "that the government maintained [informant] Evola within the church because of its subjective perception that Hale and his church were a threat to domestic security." Motion at 9. Hale has not provided any legal authority for his assertion that the length of the government's investigation into an organization which it believes may be engaging in illegal activity negates its good faith in initiating and conducting its investigation, and the court will not so hold.

Second, Hale asserts that the informant in this case "far exceeded the scope of his invitation" because he acted as an "agent provocateur," attempting to incite Hale, and others in the church, to commit murder. Motion at 10-11. As the court has already commented above, this is only one way to characterize the evidence.

Moreover, as the government points out, Hale has not identified any actions taken by the informant in the name of the church of which Hale was unaware, or which were taken in defiance of directions received from Hale. Rather, Hale continued to put trust and confidence in the informant, for example by asking him to locate the home address of the "probable Jew," District Judge Lefkow, and other individuals involved in civil litigation against Hale's church, and reminding him that "[a]ny action of any kind" against them was "entirely up to . . . the dictates of his own conscience." Government's Response at 14. Hale's continued relationship with the informant is completely

8

inconsistent with Hale's claim that the informant's activities, all of which were known to Hale, exceeded the scope of the informant's invitation.

Because the court finds that Hale's arguments do not have a sound legal basis, the court declines to order the government to provide discovery in addition to its obligations to do so under Rule 16,[8] and declines to holds an evidentiary hearing designed to serve as a fishing expedition for further inquiry into these matters. Hale's motion to Dismiss Counts Two and Three of the Indictment; Request for Additional Discovery & For an Evidentiary Hearing will be denied.[9]

**MOTION TO DISMISS COUNT THREE OF THE THIRD SUPERSEDING INDICTMENT OR FOR A CHANGE OF VENUE TO THE CENTRAL DISTRICT OF ILLINOIS**

The Third Superseding Indictment added a new charge in Count Three, alleging that Hale solicited a person, "Individual A," to murder District Judge Lefkow. Count

---

[8] Hale has not argued with the government's assertion that it has already provided discovery far greater than that it was required to produce under the Rules.

[9] The court notes that after it had finished drafting this order, it received, by facsimile on the afternoon of March 25, 2004, Hale's Reply to the Government's Response. The Government's Response was filed on December 30, 2003, making Hale's Reply quite late. As a result, the court has given it only cursory consideration, and determined that it does not provide a basis to revise this order and ruling. For the most part, the Reply disputes the government's characterization of the facts. For example, regarding the conversation in which Hale mentions lining up and shooting "the enemies of our race," he is "not encouraging the listeners to engage in violence, but rather discussing fantasies that may be possible in the event his organization comes to power." As the court has noted, Hale's analysis of the facts is no more objective than the government's, and, in general, the question whether Hale's conduct crosses the line from idle daydreaming to soliciting his disciples to commit acts of violence is for the jury as fact-finder to determine in this case.

9

Three charges that the solicitation took place "[o]n or about December 4, 2002," but does not allege where the solicitation took place or otherwise specify the location of the crime. Defendant argues that because the indictment fails to allege the venue of the crime charged, it is defective and must be dismissed. Alternatively, defendant argues that trial on Count Three should be held in the Central District of Illinois, which, discovery has revealed, is the place where the alleged act of solicitation took place.

Hale has not cited, and the court has not found, a single case dismissing an indictment on the basis that it failed to allege venue. Hale contends, however, that "the law regarding a failure to allege venue in an indictment is far from clear," and cites three cases suggesting that while such a failure is not a ground for a collateral attack or an issue to be raised for the first time on appeal, it *might* be a basis for dismissal if presented to the trial court. *See Knewel v. Egan*, 268 U.S. 442, 446, 45 S.Ct. 522, 69 L.Ed. 1036 (1925); *United States v. Branan*, 457 F.2d 1062, 1066 (6th Cir. 1972); *Bratton v. United States*, 73 F.2d 795, 798 (10th Cir. 1934).

This court reads those few Seventh Circuit cases that shed light on the issue to mean that the "might" expressed in the above cases translates to "probably should not" in this circuit. Although the government must prove that venue exists, it is not an essential fact constituting part of the offense, and need only be proved by a preponderance of the evidence. *United States v. McDonough*, 603 F.2d 19, 22 (7th Cir. 1979). Venue is "an element more akin to jurisdiction than to the substantive elements of the crime," and may even be determined by the court where not disputed and the

10

preponderance standard satisfied. *United States v. Massa*, 686 F.2d 526, 530, 531 (7th Cir. 1982).

An indictment is sufficient if it states all essential elements of the offense, informs the defendant of the nature of the charge, and enables the defendant to plead the judgment as a bar to a later prosecution for the same offense, and even when it could have been better-drafted an indictment which does so meets minimal constitutional standards and is valid. *United States v. Allender*, 62 F.3d 909, 914 (7th Cir. 1995). Thus, the court does not believe that failure to specifically plead the place where the offense is alleged to have occurred is a ground for dismissing the indictment.

The court's conclusion that the indictment is this case meets minimal constitutional standards is inferentially supported by *United States v. Rodriguez*, 67 F.3d 1312, 1317-18 (7th Cir. 1995) and *United States v. Brown*, 739 F.2d 1136, 1148 (7th Cir. 1984). In both cases the defendant argued that a defect in venue was apparent on the face of the indictment. *Rodriguez*, 67 F.3d at 1317-18; *Brown*, 739 F.2d at 1146. Unlike the present case, the defendants had not raised the venue issue in the trial court, so the Court of Appeals reviewed for plain error.

In both cases the Court of Appeals found that, because the evidence at trial was sufficient to establish venue, the convictions did not require reversal. *Rodriguez*, 67 F.3d at 1318; *Brown*, 739 F.2d at 1148. In contrast, even where not challenged at the trial level, the failure of the indictment to allege an essential element of the crime charged is reversible error. *United States v. Calhoun*, 257 F.2d 673, 680 (7th Cir. 1958). Thus, while in

11

the present case it may have been better for the indictment to allege venue, it is not a fundamental defect that requires dismissal and instead is an error (if it is an error at all) that can be remedied with proper jury instructions. Count Three of the indictment will not be dismissed.[10]

Alternatively, Hale argues that because the solicitation occurred in a face-to-face conversation in Peoria, Illinois, venue is improper in the Northern District of Illinois and venue for trial of Count Three is proper only in the Central District of Illinois. Hale takes issue with this court's earlier resolution of another motion challenging venue, in which the court found that venue in the Northern District of Illinois is proper, in part, because the impact of the solicitation at issue, had it been successful, would have been felt in the Northern District. The court relied on *United States v. Ringer*, 300 F.3d 788 (7th Cir. 2002), which held that the possible impact of false statements made in Kentucky, on a judicial proceeding in the Southern District of Indiana, was sufficient to create venue in the Southern District of Indiana. Specifically, Hale disagrees with the following portion of the court's order:[11]

_____

[10] In a footnote Hale asks that if his motion for dismissal is denied that he be given a bill of particulars as to the location of the crime so that he might later be able to plead double jeopardy if prosecuted for the same offense. The court finds it unnecessary to order a bill of particulars solely for that purpose. A defendant faced with a second prosecution for the same offense can make a prima facie showing of double jeopardy by any material of record, such as this order. *See United States v. Dempsey*, 806 F.2d 766, 767 (7th Cir. 1986). In addition, it is not necessary to order a bill of particulars not directed to an essential element of the offense. *United States v. Roya*, 574 F.2d 386, 391 (7th Cir. 1978).

[11] Which, the court notes, Hale misquotes.

> What Hale fails to appreciate is that his motive to impact a
> judicial proceeding in the Northern District of Illinois could
> be seen as a circumstance strongly corroborative of his
> intent. In other words, just like *Ringer*, where proof of a
> probable impact on the Indiana investigation was a
> "keystone to materiality," proof in the present case of the
> likely impact that murder of the presiding judge would have
> on the trademark litigation could be a keystone to proving
> the strongly-corroborating-circumstances "element" of § 373.
> This is a second reason why venue is proper in the Northern
> District of [Illinois.][12]

Order of August 21, 2003 (docket # 57) at 10-11.

According to Hale, the court has "adopted an overly expansive view of what

should be considered a strongly corroborative circumstance; and, as a result, has

expanded venue beyond any reasoned basis." Hale argues that neither the government

nor Congress (which has given examples of corroborating circumstances) views motive

as in that category, and argues that the fact "[t]hat a defendant has a motive to solicit

violence says little about his intent[.] . . . . The relative strength, weakness, or

importance of the reason does not corroborate intent. . . . . Holding that the place of

motive can serve as a basis for venue is simply an overexpansion of a venue doctrine

already stretched thin." Motion at 6-7.

This argument defies common sense, is legally wrong, and misinterprets the

court's earlier ruling. Surely Hale does not think that, given what could be a hunting

accident or an intentional shooting, the fact that the shooter knew his spouse was

---

[12] The court's order of August 21, 2003, by mistake says "Indiana" here, where
Illinois was clearly meant. The court now corrects this error *nunc pro tunc*.

having an affair with his hunting partner is irrelevant to consideration whether the shooting was intentional. Even if Hale does believe that motive "says little" about intent, the Court of Appeals disagrees. *United States v. Ewings*, 936 F.2d 903, 906 (7th Cir. 1991) ("Mail fraud is a specific intent crime, . . . and motive bears on Ewings' intent when he applied for insurance on the life of his niece, so evidence establishing a motive to defraud is relevant") (citation omitted.)

Moreover, the court's earlier ruling was not that the "place of motive can serve as a basis for venue." Motive is an impulse or emotional need that incites a person to action, and so the place of Hale's motive is of course wherever Hale is found. What causes venue to be proper in the Northern District (assuming the evidence bears these facts out) is that Hale's motive for soliciting the murder of Judge Lefkow was a desire to impact judicial proceedings in the Northern District; having that motive can be a circumstance strongly corroborating Hale's intent in regard to the solicitation; and therefore, under *Ringer*, proof of the probable impact on judicial proceedings in the Northern District of Illinois goes to one of the elements of the charged offense and serves to establish venue there.

Thus, the court stands by its earlier reasoning. Because venue is proper in any district where the effect of an overt act is intended to be felt, *United States v. Frederick*, 835 F.2d 1211 (7th Cir.1987), and Hale intended for the effect of his solicitation to be felt in the Northern District of Illinois, his motion for a change of venue to the Central District of Illinois will be denied.

14

**MOTION TO PROHIBIT SPECIAL ADMINISTRATIVE MEASURES**

Hale has been detained from the time of his arrest (based upon this court's finding that the government demonstrated by clear and convincing evidence that no conditions of release could assure the safety of others and the community), and since March 3, 2003, "special administrative measures" (hereinafter, "SAMs") have been imposed by direction of the Attorney General pursuant to 28 U.S.C. § 501.3.[13] These SAMs are intended to restrict Hale's ability to use his family, his attorneys, the press, other members of the public, and other inmates as a conduit to pass information to third parties. In other words, based on the offenses Hale is charged with and his past conduct, the Attorney General believes that were Hale allowed unfettered communication, there is a substantial risk that he would solicit others to commit crimes of violence through messages passed, either knowingly or unknowingly, by third parties.

Hale previously asked the court to take action with respect to the SAMs, when his counsel refused to sign a written acknowledgment that counsel would abide by the conditions[14] imposed by the SAMs, the signing of which was imposed as a precondition

---

[13] The court notes that the SAMs were to be in effect for one year unless extended by further direction of the Attorney General. Although neither party has mentioned that they were extended, the court assumes this to be the case.

[14] The SAMs impose a number of obligations directly on counsel, for example, requiring that counsel not repeat the content of any conversations with Hale to a third party unless solely for the purpose of preparing Hale's defense, and requiring that an attorney be present during any telephone conversation with Hale, i.e., the attorney could not have a secretary or paralegal call Hale without the attorney being present and

15

to Hale and his counsel being allowed to confer. On April 17, 2003 (docket # 35), the court ordered that the government could not impose this requirement on Hale's counsel, and the government did not seek to take an interlocutory appeal from this ruling.

At the present time Hale seeks an order from the court completely prohibiting further imposition of the SAMs. He contends that the SAMs violate his Sixth Amendment right to counsel; that the Attorney General lacks any authority to regulate his attorney's conduct outside of the walls of the Metropolitan Correctional Center, where Hale is detained; that the SAMs violate his and his attorneys' First Amendment rights; and that the SAMs violate his attorneys' Fifth Amendment Due Process rights to practice their profession.

As a practical matter, it would seem to make little difference to the preparation of Hale's defense to lift the SAMs now, less than two weeks before trial: any harm has already been done, and cannot now be undone.[15] Although resolution of Hale's motion at this late date is not Hale's fault,[16] it is true that Hale waited until December 23, 2003,

---

participating in the call.

[15] The court has, however, ordered that Hale be brought to court every morning of trial in time to allow a one-hour conference with his attorneys, in order to avoid the difficulties, both inherent and because of the SAMs, that interfere with consultations at the MCC.

[16] The government's response was not filed until February 18, 2004 (by leave of court), and, as defense counsel is aware, the undersigned judge customarily allows ten days for a reply brief to be filed. Although none was filed in this case, the undersigned did not consider the motion ready for ruling until March 4, 2004.

to raise the issue, nine months after the SAMs were imposed. To some extent, this delay itself detracts from Hale's claim that the SAMs are operating to deprive him of his Sixth Amendment right of effective representation.

More to the point, and as the government argues in its response, despite the fact that the motion was filed after nine months' experience under the SAMs', Hale's argument is long on generalities (*e.g.*, the SAMs "seriously chill zealous representation" and restrict "counsel's ability to exchange information with experts, investigators, and witnesses," Motion at 3) and lacking in any specific descriptions of instances where preparation of his defense has been prejudiced. Without such specifics, it is difficult to see a basis to conclude that Hale's Sixth Amendment rights are being, or have been, violated.

The court has discretionary authority under 18 U.S.C. § 3142(i), to order Hale into the custody of a United States Marshal if necessary to protect his Sixth Amendment right to counsel. *See Falcon v. United States Bureau of Prisons*, 52 F.3d 137, 139 (7th Cir. 1995). Hale has not asked for relief pursuant to § 3142(i), and his concerns should be remedied on that basis in the first instance to avoid, if possible, resolution of the weighty constitutional questions he raises. *United States v. Bloom*, 149 F.3d 649, 653 (7th Cir. 1998). Because Hale has not argued for relief under § 3142(i), waited nine months to voice his complaints concerning the SAMs, and has not given the court specific examples of impairment of his right to counsel, the court will not exercise its discretionary authority under § 3142(i), and so Hale's motion to prohibit the SAMs on

17

the basis that they violate his Sixth Amendment rights or cannot be applied to his attorney will be denied.

As to his claim that his, and his attorneys', First Amendment rights are being violated by the SAMs, the government points out that the press has the same access to Hale as does the public in general. Where the rights of access are the same, there is no violation of the First Amendment. *Saxbe v. Washington Post Co.*, 417 U.S. 843, 850, 94 S.Ct. 2811, 2815, 41 L.Ed.2d 514 (1974) (citing *Pell v. Procunier*, 417 U.S. 817, 834, 94 S.Ct. 2800, 2810, 41 L.Ed.2d 495 (1974) for proposition that "[N]ewsmen have no constitutional right of access to prisons or their inmates beyond that afforded the general public.")

As to his attorneys' First Amendment rights, Hale relies on *United States v. Salameh*, 992 F.2d 445, 446 (2d Cir. 1993), where the court found that, while limitations can be imposed on the speech of an attorney participating in judicial proceedings, they can be no broader than is necessary to protect the judicial system and the defendant's right to a fair trial. *Id.* at 447. Thus, the order imposed, which prohibited the attorneys from making statements having "anything to do with" the case was vacated on First Amendment grounds. *Id.*

In the present case, the pertinent provision of the SAMs states that Hale's attorneys may not "disseminate the content's of the inmate's communication to third parties" (except solely for the purpose of preparing his defense), not from commenting

18

on the case in general.[17] The court fails to see how this restriction is broader than is necessary to protect the judicial system, given that the court has found that Hale does present a danger to the community, which, to be clear, might involve violence against those involved with this case.

Moreover, as the government points out, Hale's attorneys have not discussed how the restrictions are any broader than those imposed by Local Rule 83.53.6, which, in the court's view, imposes a broader restriction than does the SAMs. Without taking issue with the impact of the Local Rule, and/or showing that the SAMs exceed its restrictions, they have not shown how the SAMs infringe their First Amendment rights. For the same reason, the court rejects Hale's argument that his attorneys' Due Process rights are being violated because the "Justice Department may not deprive Hale's counsel of their right to represent their client and practice their profession by conditioning that right on counsel's [sic] relinquishing of the right to freedom of speech." Motion at 9. Thus, the court will deny Hale's request to prohibit the SAM's on the basis of a violation of counsels' First Amendment rights.

---

[17] The court notes that for his attorneys to disclose the substance of communications with Hale would be unlikely as it would breach attorney-client confidentiality. In addition, the court questions whether a prohibition on one person disclosing a second person's communication—in effect, acting as a tape recorder—infringes free speech rights of the first person.

**CONCLUSION**

For the foregoing reasons: (1) Defendant's Motion to Dismiss Counts Two and Three of the Indictment; Request for Additional Discovery & for an Evidentiary Hearing (docket # 74) is **DENIED**; (2) Defendant's Motion to Dismiss Count Three of the Third Superseding Indictment or for a Change of Venue to the Central District of Illinois (docket # 100) is **DENIED**; and (3) Defendant's Motion to Prohibit Special Administrative Measures (docket # 105) is **DENIED**.

**SO ORDERED.**

ENTER: March 26, 2004

JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT