**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 03 CR 11 |
| ) | Judge James T. Moody |
| MATTHEW HALE, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION FOR (1) INDIVIDUAL *VOIR DIRE* OF JURORS
REGARDING AN ARTICLE PRINTED IN TODAY'S TRIBUNE; (2) AN INQUIRY
INTO ANY GOVERNMENT CONNECTION WITH THIS ARTICLE; (3) A RULE TO
SHOW CAUSE WHY THE AUTHORS SHOULD NOT BE HELD IN CONTEMPT FOR
VIOLATION OF LOCAL RULES; AND (4) FOR SEQUESTRATION OF THE JURY**

Defendant, **MATTHEW HALE**, by and through his attorneys, **THOMAS ANTHONY
DURKIN** and **PATRICK W. BLEGEN**, pursuant to the Due Process and Equal Protection
clauses of the Fifth and Fourteenth Amendment to the Constitution of the United States, as well
as LR83.53.6 of the Local Rules of this Court, hereby moves for the following relief from an
inflammatory and prejudicial news article prominently published and displayed in the *Chicago
Tribune* this morning: (1) that the Court conduct individual *voir-dire* of the jurors to determine
whether he or she read, or otherwise became aware of the article, including viewing the large
photograph of the defendant; (2) that the Court inquire of the government attorneys whether
anyone from its office assisted the authors of the article, Harlan A. Loeb and Richard S.
Hirschhaut, in the preparation of said article, or otherwise encouraged or assisted in its
publication; (3) that this Court enter a Rule to Show Cause why the author or authors, one of
whom is an attorney, should not be held in contempt for a direct violation of local rules; and, (4)
that this Court enter an order sequestering the jury so as to prevent any further such deliberate

attempts to sabotage this trial.

In support of this motion, Defendant, through counsel, shows to the Court the following:

1.      In its Monday, April 19, 2004, Final Edition, the *Chicago Tribune* published an article in its Commentary or "op-ed" section on page 23 of the first section, directly opposite the editorial page. The article contained a large photograph of the Defendant seated beneath the WCOTC flag with copies of the *White Man's Bible* and *Nature's Eternal Religion* placed in front of him. The article bears a headline that reads as follows: ***"Incitement posing as free speech: from the mouth of a hate monger, words can kill."***

2.      The article is written by Harlan A. Loeb and Richard S. Hirschhaut. Loeb, according to the article, is the former Midwest civil rights director for the Anti-Defamation League, works with Hill & Knowlton, and is an adjunct professor of law at Northwestern University. Hirschhaut is the Chicago Regional Director for the Anti-Defamation League. On information and belief, one or both individuals have regularly attended these proceedings.

3.      The article is so inflammatory and prejudicial that even a cursory reading of it demonstrates that it was a deliberate and flagrant attempt to poison these proceedings against the Defendant. For but one example, the article labels Hale as a "fugitive" for inciting the Ben Smith shooting spree, and states that "this trial represents the resuscitation of a case [*i.e.*, the Smith case] that should have been brought almost 5 years ago."[1] At yet another point in the article, the authors cavalierly state that: "It is beyond dispute that Smith was so influenced and inspired by

---

[1] In that this quote so correctly plays upon a central theory of Defendant's case, *i.e.*, that the government set Hale up with the Judge Lefkow charges so as to make up for its inability to bring charges against Hale for the Smith shootings, the only comfort counsel can get from this article is that it must be clear to the authors, and even the *Chicago Tribune*, that the defense is winning.

2

Hale's racist and anti-Semitic rhetoric that he was willing to embrace martyrdom." A copy of said article, copied from the *Tribune's* internet edition is attached hereto as Exhibit A. A copy of the article published in the print edition sold on the streets will be submitted under separate cover as Exhibit A-1. The Court needs to see the size of the article and the photograph, as well as its relationship to the editorial page, Exhibit A-2, a very well read section of the paper, to appreciate the likelihood that it would have been unavoidable for any juror reading the *Tribune* this morning to have missed it.

4. Counsel are mindful that sequestration of the jury is not something to be considered lightly. However, it is well within the Court's discretion to order such relief when necessary. *See, e.g., United States v. Holovachka*, 314 F.2d 345, 352 (7th Cir. 1963). Reluctantly, counsel believe such an alternative is now necessary. For whatever reasons, it is abundantly clear that this case touches on such emotional subjects that people seem quite willing to poison these proceedings against the Defendant to obtain a result they believe is appropriate.

5. In addition to sequestration, counsel also believe that an individual inquiry of each juror is necessary to determine whether and to what extent jurors have been influenced by this article. *See, United States v. Porcaro*, 648 F.2d 753 (1st Cir. 1981), *citing, Margoles v. United States*, 407 F.2d 727 (7th Cir. 1969).

6. With regard to the requested rule to show cause, counsel submit that the publication of the attached article by an attorney is a direct violation of Local Rule 83.53.6.

3

Respectfully submitted,

_____
**THOMAS ANTHONY DURKIN,**

_____
**PATRICK W. BLEGEN,** Attorneys for
Defendant.

**DURKIN & ROBERTS**
53 West Jackson Boulevard, Suite 615
Chicago, Illinois 60604
(312) 922-8980

4

Case: 1:03-cr-00011 Document #: 141 Filed: 04/19/04 Page 5 of 7 PageID #:902

## Chicago Tribune
### —ONLINE EDITION—

http://www.chicagotribune.com/news/printedition/chi-0404190092apr19,1,3572268.story?coll=chi-printcommentary-hed

# Incitement posing as free speech

## From the mouth of a hate-monger, words can kill

By Harlan A. Loeb and Richard S. Hirschhaut. Harlan A. Loeb, former Midwest civil rights director for the Anti-Defamation League, works with Hill & Knowlton and is an adjunct professor of law at N

April 19, 2004

Advertisement



As white supremacist Matthew Hale sits on trial for solicitation to kill a federal judge, the testimony and evidence bring back vivid memories of our July 4th, 1999 weekend. During those 36 hours, Benjamin Nathaniel Smith, an avowed white supremacist and one of the leaders of a fiercely anti-Semitic and racist organization known as the "World Church of the Creator," engaged in a two-state shooting spree that claimed two lives and injured nine other people. The victims were all members of racial and religious minority groups including African-Americans, Asians, and Jews. Smith was so consumed by the hate rhetoric espoused by his organization that he surrendered his own life. Recordings recently played in court were particularly painful to us because Hale was reveling in the shootings of two close friends of ours.

Much like drug addicts who become slaves to their addictions, Smith, too, was willing to take his own life in pursuit of the perfidious white supremacist objectives of the hate group to which he was absolutely devoted, and to Hale, its "Pontifex Maximus." .

It is beyond dispute that Smith was so influenced and inspired by Hale's racist and anti-Semitic rhetoric that he was willing to embrace martyrdom. In eulogizing Smith's suicide to the media, Hale recalled bestowing a Leadership Award on him for his zealotry in distributing the organization's hate rhetoric. Smith was credited with distributing over 45,000 pieces of hate literature throughout Chicago's northern suburbs. After the shootings, Hale cited Smith as one of the heroes of the organization for his martyrdom in "pursuit of the cause."

The virulently anti-Semitic and racist Hale has been twice denied admission to the Illinois Bar by the Illinois Supreme Court's Committee on Character and Fitness. He advocates a total separation of the races in order to protect the genetic integrity of whites from the threat posed by the so-called "mud races," in which he includes Jews, African Americans, and all other racial and ethnic minorities.

Smith's very close and loyal relationship with Hale is supported by much of the testimony during the current trial for solicitation. Additionally, Hale noted in the aftermath of Smith's shooting rampage that he did not mourn the victims because their lives were as inconsequential as those of dogs or insects.

Hale has always, and sometimes legitimately, cloaked his racist and anti-Semitic swill under the democratic protections of free speech and othercivil liberties. Indeed, until the 1999 shooting spree, he was an unchallenged beneficiary of one of the most important guarantees of our Bill of Rights.

But Hale's invectives were ingested by Smith in doses so high that violence was the only outlet for Hale's "emotional call to arms."

In 1999, we tried to assemble a wrongful death case against Hale, but the link that the Anti-Defamation League and others believed existed between Hale's white supremacist doctrine and Smith's shooting spree was not sufficiently clear through admissible evidence to ensure that the case would go to a jury. Hale now faces the possibility of a considerable jail sentence based on the recordings and testimony of some of his former "top lieutenants."

In emotional terms for those of us who view Hale as a fugitive, including dear friends who were either victims or lost loved ones at the hand of Smith, this trial represents the resuscitation of a case that should have been brought almost 5 years ago.

Although Hale's trial touches on the continuing debate on the limits of hate speech, the hate-inspired shooting spree and solicitation charge demonstrate that the hate speech debate can no longer be consigned exclusively to the precincts of 1st Amendment theory. The Hale case challenges us all to recognize that the constitutional limits of dissent end when violence begins.

Though Hale insists that he supports only a "lawful" ethnic, racial and religious cleansing of the U.S., his rhetoric and hateful codes cannot now be mistaken for anything other than incitement. While hate is the instrumentality through which Hale caused injury and death, we can be sure that Hale is on trial--not hate.

*Copyright © 2004, Chicago Tribune*

---

# Improved archives!

**Searching Chicagotribune.com archives back to 1985 is cheaper and easier than ever. New prices for multiple articles can bring your cost as low as 30 cents an article: http://www.chicagotribune.com/archives**

*See Case File For Exhibits*