IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

**FILED**

MAY 0 4 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**DOCKETED**

MAY 5 - 2004

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 03 CR 011 |
| v. | ) | |
| | ) | Judge James T. Moody |
| MATTHEW HALE, | ) | (sitting by designation) |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF CHICAGO TRIBUNE'S MOTION TO INTERVENE AND FOR IMMEDIATE ACCESS TO PUBLIC RECORDS UNDER SEAL

The media's constitutional and common law rights to obtain access to judicial proceedings and records, and to report to the fullest extent possible on what transpires in the courtroom, is long standing and especially critical in criminal proceedings. This criminal case involves a solicitation to murder a United States District Court Judge, and has generated a substantial amount of publicity. Given the nature of the allegations and the context of this criminal proceeding, the public has a particularly heightened interest in this case.

At trial, a sidebar conference took place on April 9, 2004, during jury selection, at which time it is believed that Defendant was called into the sidebar. The transcript of that sidebar conference apparently was placed under seal and remains under seal to this day, even after the trial has concluded.

Chicago Tribune Company ("Tribune") requested a copy of the sidebar transcript after trial, and was denied access. To fairly and accurately report on this important public matter, Tribune seeks to exercise its First Amendment and common law rights to obtain access to and copy the transcript of this sidebar conference. Release of the transcript, especially after the conclusion of the trial, does not pose a threat to Defendant's right to a fair trial or privacy interests. Accordingly, Tribune's motion should be granted and access provided immediately.

197

## FACTUAL BACKGROUND

*The Underlying Case.* On January 9th, 2003, a grand jury indicted Matthew Hale ("Hale"), alleging, among other things, that Hale, the leader of a white supremacist organization, solicited another individual to kill United States District Court Judge Joan Humphrey Lefkow. (Indictment, dated January 9, 2003, docket no. 1; see also First Superseding Indictment, dated June 25, 2003, docket no. 47; Second Superseding Indictment, dated August 28, 2003, docket no. 58; Third Superseding Indictment, dated October 29, 2003, docket no. 87.) Hale was tried in April 2004, and on April 26, 2004, a jury found Hale guilty on four counts contained in the indictment, including the plot to kill Judge Lefkow. (Verdict, docket no. 181.)

*The Sealed Sidebar Transcript.* *Chicago Tribune* reporter Matt O'Connor covered the Hale trial, writing numerous articles for the *Chicago Tribune* related to the proceedings. (Representative articles are attached as Exhibit 1.) The day after the trial concluded, Mr. O'Connor sought access to material in the court file, including the transcript of a sidebar that was held on April 9, 2004. Mr. O'Connor's request for the April 9, 2004 sidebar transcript was denied because the transcript has been placed under seal. Tribune recognizes that at the time the transcript was sealed, this Court did not have before it the arguments made on behalf of the public and media, which are presented here, in support of the important constitutional and common law right of access to the sidebar transcript.

*Intervenor, Chicago Tribune.* Intervenor Tribune publishes the daily newspaper, *Chicago Tribune*, which is circulated nationwide and reports on numerous topics and events in the Chicago metropolitan area and Illinois, as well as globally. For more than a century, *Chicago Tribune* has worked painstakingly to provide comprehensive, accurate accounts of newsworthy events and cases of interest to the public. Since 1932, its journalists have won twenty-two Pulitzer Prizes. *Chicago Tribune* recently has received numerous accolades for its

- 2 -

various series of investigative reports on matters of public interest. *Chicago Tribune* has followed and published several articles on Defendant's case, which is of special and heightened interest to the public. Both the *Chicago Tribune* articles, and other news articles and television broadcasts, have widely reported on the Hale trial.

## ARGUMENT

### I. TRIBUNE IS ENTITLED TO INTERVENE TO PROTECT THE PUBLIC RIGHT OF ACCESS.

It is well established that those who seek to assert the right of public access to court proceedings and judicial records "have a right to be heard in a manner that gives full protection of the asserted right." See In re Associated Press, 162 F.3d 503, 506 (7th Cir. 1998) (recognizing right of press to intervene for limited purpose of asserting First Amendment rights of access). In a succession of cases, the Seventh Circuit has determined that "the most appropriate procedural mechanism by which to accomplish this task is by permitting those who oppose the suppression of material to intervene for that limited purpose." Id. (citing numerous cases); see also Jessup v. Luther, 227 F.3d 993, 997 (7th Cir. 2000) ("The right to intervene ... is rooted in the public's well-established right of access to public proceedings."); United States v. Ladd, 218 F.3d 701, 702 (7th Cir. 2000). Here, Tribune has sought access to the sidebar transcript immediately after the conclusion of the trial,[1] and has a right to intervene in this case for the limited purpose of seeking access to the sidebar transcript.

---

[1] A motion to intervene is considered proper and timely even if filed after dismissal of a case when that motion is necessary to protect the interests of the intervenor. Doe v. Marsalis, 202 F.R.D. 233, 236 n.2 (N.D. Ill. 2001) (granting newspaper's motion to intervene based on public's need to review police misconduct files where intervention petition filed nine months after settlement); Wiggens v. Burge, 173 F.R.D. 226, 228 (N.D. Ill. 1997) (granting newspaper's motion to intervene seeking access to documents where motion filed after settlement and dismissal because motion did not require pending case or independent jurisdictional basis).

## II.   THE FIRST AMENDMENT GUARANTEES PUBLIC ACCESS TO THE JUDICIAL RECORDS IN THIS PROCEEDING.

As noted by the United States Supreme Court, "[i]t would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted." Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 575 (1980). The sidebar transcript sought by Tribune is "an integral part of a criminal trial." United States v. Smith, 787 F.2d 111, 114 (3d Cir. 1986) (affirming right of press to access transcripts of sidebar conferences under the common law right to access judicial records).

Through a long and distinguished history of cases, the Supreme Court has recognized the *presumption of access* to criminal court documents, transcripts, tape recordings and other records of trial proceedings, and the right of the press to attend and view criminal proceedings and trials. Richmond Newspapers, 448 U.S. at 564-569 (detailing history of access to open courts); Globe Newspaper Co. v. Superior Court for the County of Norfolk, 457 U.S. 596, 605-606 (1982) (access to criminal trials); Press-Enterprise Co. v. Superior Court of California, 464 U.S. 501, 508-510 (1984) ("Press-Enterprise I") (access to voir dire); Press-Enterprise Co. v. Superior Court of California, 478 U.S. 1 (1986) ("Press-Enterprise II") (access to preliminary hearing). As Justice Brennan observed,

> [T]he right of access to criminal trials plays a particularly significant role in the functioning of the judicial process and the government as a whole. Public scrutiny of a criminal trial enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole. Moreover, public access to the criminal trial fosters an appearance of fairness, thereby heightening public respect for the judicial process.

Globe Newspaper, 457 U.S. at 606.

This public right of access to court proceedings and documents is also well-established in lower courts, including the Seventh Circuit. See Grove Fresh Distribs., Inc. v. Everfresh Juice Co., 24 F.3d 893, 897 (7th Cir. 1994) (the "common-law right of access establishes that court

- 4 -

files and documents should be open to the public unless the court finds that its records are being used for improper purposes"); Associated Press, 162 F.3d at 506 ("[p]ublic scrutiny over the court system serves to (1) promote community respect for the rule of law, (2) provide a check on the activities of judges and litigants, and (3) foster more accurate fact finding") (citing Grove Fresh, 24 F.3d at 897) (other citations omitted); Smith, 787 F.2d at 114-115 (right of access to trial transcripts includes transcripts of sidebar conferences).

There is no question that the public has a common law right of access to court files. In Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978), the Supreme Court stated that "[i]t is clear that the courts of this country recognize a general (common law) right to inspect and copy public records and documents, including judicial records and documents." Other courts have noted that "[t]he common law right of access is not limited to evidence, but rather encompasses all 'judicial record documents.' It includes 'transcripts, evidence, pleadings, and other materials submitted by litigants. . . .'" United States v. Martin, 746 F.2d 964, 968 (3d Cir. 1984) (emphasis added); Smith, 787 F.2d at 114.

Further, the interests of public access to court proceedings are heightened in a criminal proceeding, like this one, featuring a defendant convicted of highly publicized and particularly disturbing criminal activity. Because the transcript of the sidebar conference is part of the public record in this case, the perception that a portion of this proceeding may be conducted in secrecy, or that information regarding the proceeding cannot be accurately reported to the public, undermines rather than supports the judicial process. Richmond Newspapers, 448 U.S. at 571-72. The guarantee of open access to criminal court documents also facilitates the significant community therapeutic value that comes with the knowledge that justice is being served, protects judges and prosecutors from imputations of dishonesty, and provides "an outlet for community concern, hostility and emotion" in this public proceeding concerning a defendant accused of such

highly publicized criminal activity. Richmond Newspapers, 448 U.S. at 571-72. For these reasons, the public has a constitutional and common law right of access to the sidebar transcript, which must be fulfilled, absent a compelling need for closure.

## III. THE HEAVY BURDEN FOR DENYING ACCESS TO THE TRANSCRIPT IS NOT MET HERE.

The First Amendment constitutional right of access is so significant that there is a "strong presumption" favoring the public's right to access criminal proceedings and inspect and copy judicial records. Press-Enterprise I, 464 U.S. at 510. The presumption of access to criminal court proceedings and documents -- including sidebar transcripts -- can be overcome *only* by showing closure "is essential to preserve higher values and is narrowly tailored to serve that interest." See Press-Enterprise I, 464 U.S. at 510. Thus, to justify an order denying access, a trial court must make particularized findings that:

      (1)     identify an overriding interest requiring denial of access;

      (2)     narrowly tailor the closure order to protect that interest and, in doing so, specifically consider alternatives to denying access; and

      (3)     make specific findings adequate to support the decision that closure is the only alternative that can serve that interest.

Id. See also Associated Press, 162 F.3d at 510 (a court's explanation "for permitting the sealing of any material that is part of the record ought to provide a description of the documents and the reasons for their sealing in order to permit meaningful appellate review") . On the whole, "[o]vercoming the presumption [of access] … is a formidable task. The court must be 'firmly convinced that disclosure is inappropriate before arriving at a decision limiting access.'" Associated Press, 162 F.3d at 506 (citing Press-Enterprise I, 464 U.S. at 510).; see also Press-Enterprise II, 478 U.S. at 13-14.

**A.    Maintaining the Sidebar Transcript Under Seal Cannot Pass Muster Under First Amendment Strict Scrutiny or the Common Law Test for Access.**

As Supreme Court and Seventh Circuit precedent make clear, this Court is entrusted with ensuring the public's right of access to judicial records and, therefore, must make a fact-based determination and particularized findings on the record under the Press-Enterprise test outlined above that there is a compelling need for the continued sealing of the transcript and that such sealing of the entire sidebar conference is the *least restrictive* means necessary to protect the legitimate interests involved.  Press-Enterprise I, 464 U.S. at 510; see also Smith, 787 F.2d at 114 (an order denying press or public access to sidebar conferences "must be available for public review so that the purposes of open trials can be satisfied"); Grove Fresh, 24 F.3d at 898 ("when a court finds that the presumption of access has been rebutted by some countervailing interest, that 'interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered'") (citing Press-Enterprise I, 464 U.S. at 510).

Tribune recognizes that this Court did not previously have the benefit of the arguments on behalf of the press and public, and respectfully submits that, under the Press-Enterprise I test outlined above, the presumption of public access to the sidebar transcripts is not overcome in this case and such transcripts should be made public immediately.  Indeed, maintaining the transcripts under seal would be particularly inappropriate here, where an Order with specific findings for sealing the transcript was never entered, and where, in any event, the verdict now has been rendered and the trial concluded.  Accordingly, this Court should unseal and provide immediate access to the transcript of the April 9, 2004 sidebar conference.

- 7 -

**B.      There is No Compelling Need to Deny Access to the Transcript.**

At this stage of the proceedings, there is no valid reason for maintaining the transcripts of

the sidebar under seal.  The United States Attorneys' Office, through counsel, has indicated that

the government has no objection to unsealing this particular sidebar on April 9, 2004.  In

addition, there is no conflict between Hale's right to a fair trial and the right of access to the

transcript at this stage of the case.[2]  The Supreme Court rejected the false dichotomy between the

defendant's rights and the public's in Press-Enterprise I:

> [H]ow we allocate the "right" to openness as between the accused and the public … is not
> crucial.  No right ranks higher than the right of the accused to a fair trial.  But the
> primacy of the accused's right is difficult to separate from the right of everyone in the
> community to [view the proceedings] which promotes fairness. … Openness thus
> enhances both the basic fairness of the criminal trial and the appearance of fairness so
> essential to public confidence in the system.

464 U.S. at 508 (citation omitted).  See also Waller v. Georgia, 467 U.S. 39, 46 (1984) ("the

requirement of a public trial is for the benefit of the accused;  that the public may see he is fairly

dealt with and not unjustly condemned …").  In any event, the trial has now concluded, thus

precluding the argument that Defendant's "fair trial" rights should somehow justify the

continued suppression of an otherwise public document.

As the Seventh Circuit has repeatedly observed, the work of the federal judicial system is

"presumptively public business," Union Oil Co. of Cal. v. Leavell, 220 F.3d 562, 568 (7th Cir.

2000), and "the benefits of a public trial … are a central tenet of our judicial structure." Walton

v. Briley, 361 F.3d 431, 432 (7th Cir. 2004).  Accordingly, although the public and press may

sometimes be justifiably excluded from *contemporaneous* access at the time of the "huddle" of a

"bench interchange" or conference in chambers, "the public interest in the ruling is not

diminished.  At some stage … that ruling *must* be available for public review so that the

---

[2] Defendant's position on Tribune's motion is not clear at the present time.  Counsel for
Defendant, Thomas Anthony Durkin, has indicated he needs to confer with the Defendant, Mr.
Hale.

purposes of open trials can be satisfied," such as through a subsequently available transcript of the sidebar proceedings. Smith, 787 F.2d at 114 (emphasis added) ("By inspection of such transcripts, the public, usually through the press, can monitor, observe, and comment on the activities of the judge and the judicial process").

In short, because the public has a right to access the criminal trial proceedings in this case and the transcript is a presumptively public document, and because there is no compelling interest in maintaining the secrecy of the sidebar proceedings at this stage of the case, the transcript must be made available.

## IV. ACCESS DELAYED IS ACCESS DENIED.

The right of access to the sidebar transcript is not only critical to Tribune's ability to report completely and accurately on these proceedings, but it is equally as important that such access is *prompt*. Grove Fresh, 24 F.3d at 897-98. Newspapers are concerned with reporting contemporaneous events. If access to accurate information is delayed, the ability and usefulness of conveying complete and accurate information will have diminished. Id. at 897 ("the newsworthiness of a particular story is often fleeting").

Delayed full access also will deny effective public scrutiny and prevent Tribune from serving its educational and fact-finding functions. See id. ("To delay or postpone disclosure undermines the benefits of public scrutiny and may have the same result as complete suppression"). The ability to obtain timely, accurate, and complete information is critical to Tribune's ability to promote public understanding of this case. The First Amendment demands that the press not be silenced at the time it can be most effective.

Delayed access, however brief and to whatever degree, will foster the unwholesome perception of the need for secrecy in a public proceeding -- a flagrant anomaly. This perception harms the judicial process more than access to the sidebar transcript ever could.

- 9 -

## CONCLUSION

For the foregoing reasons, Chicago Tribune Company prays this Honorable Court will

grant Tribune access to the April 9, 2004 sidebar transcript and allow copying of the transcript

immediately.

Respectfully submitted,

By: _____

One of the attorneys for
Chicago Tribune Company

Natalie J. Spears (#6230320)
S. Roberts Carter III (#6277232)
SONNENSCHEIN NATH & ROSENTHAL LLP
8000 Sears Tower
Chicago, IL  60606
(312) 876-8000

Dated:  May 4, 2004

14376190.2

- 10 -

# See Case File For Exhibits