## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FILED

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | No. 03 CR 11 |
| v. | ) | Judge James T. Moody |
| | ) | |
| MATTHEW HALE, | ) | |
| Defendant. | ) | |

**NOTICE OF FILING**

By US Mail to:

**DOCKETED**

JUN 2 4 2004

M. David Weisman
Victoria Peters
Assistant United States Attorneys
219 S. Dearborn St., 5ᵗʰ Floor
Chicago, IL 60604

Courtesy copies by US Mail to:

Judge James T. Moody
United States District Court
Northern District of Indiana
5400 Federal Plaza
Hammond, IN 46320

**PLEASE TAKE NOTICE** that on the 24ᵗʰ day of June, 2004, the undersigned caused to be filed with the Clerk of the District Court for the Northern District of Illinois, at Chicago, Illinois, the attached Defendant's Post-Trial Motion in the above captioned matter, a copy of which is hereby served upon you.

Respectfully submitted,

Timothy M. Murphy (6257595)
Attorney for the Defendant

TIMOTHY M. MURPHY, P.C.
3758 W. Montrose Ave.
Chicago, IL 60618
773.463.1203

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FILED

JUN 2 4 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | No. 03 CR 11 |
| v. | ) | Judge James T. Moody |
| | ) | |
| MATTHEW HALE, | ) | **DOCKETED** |
| Defendant. | ) | JUN 2 4 2004 |

**DEFENDANT'S POST-TRIAL MOTION**

NOW COMES the Defendant, Matthew Hale, by and through the law firm

of Timothy M. Murphy, P.C., and following the judgment of conviction entered

against Defendant on four counts on April 26, 2004, and moves this Honorable

Court enter a judgment of acquittal on those four counts, pursuant to Federal

Rule of Criminal Procedure 29(c), or in the alternative, grant Defendant a new

trial on those four counts, pursuant to Federal Rule of Criminal Procedure 33. In

support thereof, Defendant states as follows:

## I. Motion for Judgment of Acquittal – Count I – 18 USC 1503.

### A. Introduction

On April 26, 2004, Defendant was found guilty of Count I of the Third

Superceding Indictment, charging him with obstruction of justice.

Specifically, Defendant was charged with sending a letter to United States

District Judge Joan Humphrey Lefkow, regarding material in Defendant's

possession which could have been covered by an order entered by Judge

207

Lefkow in a Civil Case. (See Third Superceding Indictment, attached hereto as Exhibit A).

As the jury was instructed, in order to find Defendant guilty on Count I, the jury must find beyond a reasonable doubt that 1) Defendant intended to influence, obstruct or impede the due administration of justice, 2) that Defendant acted knowingly, 3) that the Defendant's acts were done with the purpose of wrongfully impeding the due administration of justice. (See Jury Instructions in Volume 12, page 10 of trial transcript, attached hereto as Exhibit B).

On Defendant's motion, the trial court must enter a judgment of acquittal, notwithstanding the verdict of the jury, on any count for which there was insufficient evidence to sustain a conviction. <u>Fed. Rules Crim Proc. R 29</u>. In other words, if there was insufficient evidence to prove beyond a reasonable doubt any of the propositions which were the government's burden to prove, a judgment of acquittal must be entered.

B. <u>Government did not offer sufficient evidence to prove beyond a reasonable doubt that Defendant intended to influence, obstruct or impede the due administration of justice.</u>

A thorough examination of the trial transcript will reveal that the sum total of the government's evidence regarding Count I of the indictment

consists of the letter written by Defendant to Judge Joan Lefkow on December 12, 2002, and later testimony regarding books and other items seized during an FBI raid of Defendant's home. This is all of the evidence offered by the government to meet its burden of proof, and its efficacy as evidence depends on a misinterpretation by the government, that is, that the statement in Defendant's letter claiming that "from my understanding of the order, I have no material in my control or possession that falls afoul of it," (Volume 4 page 144-5 of trial transcript, attached hereto as Exhibit C) is a deliberate lie on Defendant's part, meant to impede the due administration of justice. The evidence adduced by the government from its own witnesses shows that this is not a reasonable interpretation of the evidence at trial.

The entire text of the December 12, 2002 letter to Judge Lefkow was read into the record at trial (Volume 4 page 142-5 of trial transcript, attached hereto as Exhibit C). Nowhere in that letter will any threat or coercion be found. The letter merely asks Judge Lefkow to consider motions pending before her. In fact, it can not even be argued that Defendant tried to influence the Judge through *ex parte* communication, as he sent a copy of his letter to the attorneys for the other side. (Volume 4 page 142 of trial transcript, attached hereto as Exhibit C). Moreover, at no point does the government attempt to make these arguments. Rather, it relies upon mere argument that the

statement quoted in the paragraph above was a lie. The government's own witnesses belie this claim.

The first witness called by the government was James Amend, who had served as one of the attorneys for TE-TA-MA Truth Foundation in its civil litigation against Defendant's organization. Mr. Amend testified, repeatedly, that Judge Lefkow's order, entered upon orders from the Court of Appeals for the Seventh Circuit, did not require the destruction of materials in Defendant's possession (see Volume 4 page 63 of trial transcript, attached hereto as Exhibit D, and Volume 4 page 110 of trial transcript, attached hereto as Exhibit E). Mr. Amend specifically noted that simply masking or covering the offending words on any materials would be sufficient to comply with the order. (Volume 4 pages 76-7 of trial transcript, attached hereto as Exhibit F). In fact, Mr. Amend, government witness and attorney adverse to Defendant in the civil litigation, notes that it would be "...silly to destroy the whole product if the remedy can be accomplished by simply masking out the infringing words on the product." (Volume 4 page 65 of trial transcript, attached hereto as Exhibit G).

With this testimony as the backdrop, there is only one reasonable conclusion to be drawn regarding Defendant's statement that he had no material falling afoul of the order, and that is, that the statement was true.

Defendant had completed law school, and according to the testimony of James Amend, Defendant's briefs written in the trademark litigation showed an understanding of the law. (Volume 4 page 57 of trial testimony, attached hereto as Exhibit H). Certainly Defendant would have understood his options under Judge Lefkow's order. Certainly Defendant understood that he could retain the material, so long as the offending marks were masked out. While much was made of Defendant's rhetoric to the members of his organization that he would not see their books destroyed, this is probative of nothing regarding whether Defendant's December 12, 2002 letter was an attempt to obstruct justice. If Defendant was willing and able to mask out the offending marks, his statement was certainly correct – he possessed no material that would fall afoul of the order.

While it may be said that there is no evidence that the Defendant attempted to remove or mask out the offending marks, it must be remembered that it is the government's burden to prove beyond a reasonable doubt that the Defendant intended to obstruct justice, not the Defendant's burden to prove that he did not so intend. Defendant's letter reflects opting for the most reasonable way to comply, defined as such by the government's own witness, that is, masking out the offending marks. The government offered no evidence that Defendant did not intend to mask out the offending

marks, no evidence that any books or material with the offending marks were distributed after the date of Judge Lefkow's order, no evidence of anything except one statement in a letter, which the government claimed was a lie, and which was shown by their own witness to be merely the most reasonable way of complying with Judge Lefkow's order.

Because the government failed to prove beyond a reasonable doubt one of the essential elements of the charge contained in Count I, specifically, that Defendant attempted to influence, obstruct or impede the due administration of justice, Defendant is entitled to a judgment of acquittal as a matter of law on Count I.

C. Government did not offer sufficient evidence to prove beyond a
    reasonable doubt that Defendant acted knowingly.

If, *arguendo*, the government had proved that the December 12, 2002 letter sent from Defendant to Judge Lefkow constituted an attempt to influence, obstruct or impede justice, the government would further have to prove that Defendant had acted knowingly in doing so. In other words, if the statement that Defendant possesses no materials falling afoul of the order was untrue, it must be shown that Defendant knew that it was untrue. This, the government completely failed to do.

To begin with, the clear language of the order entered by Judge Lefkow, which was entered into evidence at the trial of the instant matter, indicated that retaining the materials and simply removing the infringing marks, if possible, was a valid way of complying with the order. Looking at that order, Defendant can not possibly be faulted for retaining the materials in his possession and assuring Judge Lefkow that he was in compliance. Any reasonable person, reading that order, would believe that he was allowed to retain the materials if the proper steps were taken.

In fact, a reasonable person, James Amend, attorney with 35 years of trademark litigation experience, testified that the interpretation of the order by Mr. Hale was in fact the most reasonable. Mr. Amend testified that Judge Lefkow's order did not require the destruction of materials in Defendant's possession (see Volume 4 page 63 of trial transcript, attached hereto as Exhibit D, and Volume 4 page 110 of trial transcript, attached hereto as Exhibit E) and that simply masking or covering the offending words on any materials would be sufficient to comply with the order. (Volume 4 pages 76-7 of trial transcript, attached hereto as Exhibit F). Again, Mr. Amend notes that it would be "...silly to destroy the whole product if the remedy can be accomplished by simply masking out the infringing words on the product." (Volume 4 page 65 of trial transcript, attached hereto as Exhibit G).

In short, the government's own case showed that no less reasonable people than the attorney for the adverse side and the very judge presiding over the case believed that Defendant could retain the materials, so long as certain conditions were met. The government offered no further evidence on this point. If it was agreed by the government witnesses that retaining the materials was an option, it must also be reasonable for Defendant to have believed so. In light of this, his statement to Judge Lefkow, truthfully reflecting his opinion (an opinion shared by Defendant, Judge Lefkow and James Amend) can not be said to be a knowing misrepresentation. Therefore, it cannot be a knowing attempt to obstruct justice. In light of the lack of any other government evidence, it is clear that a reasonable jury must conclude that Defendant did not make a knowing attempt to obstruct justice. As the government did not prove this required element of its case beyond a reasonable doubt, Defendant is entitled to a judgment of acquittal as a matter of law on Count I.

D. Government did not offer sufficient evidence to prove beyond a reasonable doubt that the Defendant acted with the purpose of wrongfully impeding the due administration of justice.

As discussed above, the government's witnesses in this matter establish that the letter written by the Defendant reflected not only a valid view of his

compliance with Judge Lefkow's order, but the most reasonable view. If, *arguendo*, Defendant's statement to Judge Lefkow in his December 12, 2002 letter was a knowing misrepresentation, the government still offered precious little evidence that could tend to show any reasonable person that Defendant acted with the purpose of obstructing justice.

In fact, the only evidence tendered was an email, sent by Defendant to the members of his organization, stressing that their books should not be burned. However, nowhere in his letter to Judge Lefkow is such militant language present. Again, based on the testimony of government witnesses as described and cited above, the most likely conclusion is that Defendant hoped to hang onto his materials and mask out the infringing marks. While there is no evidence that the Defendant attempted to remove or mask out the offending marks, it must be remembered that it is the government's burden to prove beyond a reasonable doubt that the Defendant intended to obstruct justice, not the Defendant's burden to prove that he did not so intend. In other words, there is no evidence that Defendant did not so intend, and the only reasonable conclusion based on the evidence offered by the government is that he did so intend. Also worth noting is that Defendant was arrested very shortly after that letter was sent to Judge Lefkow -- Defendant did not have

time to arrange for the alteration of the materials in his possession prior to his arrest.

As the government did not offer sufficient evidence to prove beyond a reasonable doubt that Defendant's letter was sent with the purpose of obstructing justice, which is a required element of the crime, Defendant is entitled to a judgment of acquittal as a matter of law on Count I.

## II.   Motion for Judgment of Acquittal – Count II – 18 USC 373.

### A.   Introduction

On April 26, 2004, Defendant was found guilty of Count II of the Third Superceding Indictment, charging him with solicitation to commit a crime of violence. Specifically, Defendant was charged with soliciting government informant Tony Evola to commit a forcible assault and murder of United States District Judge Joan Humphrey Lefkow. (See Third Superceding Indictment, attached hereto as Exhibit A).

As the jury was instructed, in order to find Defendant guilty on Count II, the jury must find beyond a reasonable doubt that 1) Defendant, with strongly corroborative circumstances intended for Tony Evola to engage in conduct constituting a felony that involved the use, attempted use or threatened use of force against Judge Joan H. Lefkow, and 2) that Defendant solicited, commanded, induced or otherwise endeavored to persuade Tony

Evola to engage in that conduct. (See Jury Instructions in Volume 12, pages 10 and 11 of trial transcript, attached hereto as Exhibit B). Examples of "strongly corroborative circumstances" include a) the fact that Defendant offered or promised payment or some other benefit to the person solicited if he would commit the offense; b) the fact that the Defendant threatened harm or some other detriment to the person solicited if he would not commit the offense; c) the fact that the Defendant repeatedly solicited the commission of the offense, held forth at length in soliciting the commission of the offense, or made express protestations of seriousness in soliciting the commission of the offense; d) the fact that the Defendant believed or was aware that the person solicited had previously committed similar offenses; and e) the fact that the Defendant acquired weapons, tools or information suited for use by the person solicited in the commission of the offense or made other apparent preparations for the commission of the offense by the person solicited. (See Jury Instructions in Volume 12, pages 12 and 13 of trial transcript, attached hereto as Exhibit B).

Further, the government had the burden of proving beyond a reasonable doubt that Defendant was not entrapped. Specifically, the government had to prove that either 1) before contact with law enforcement the Defendant was ready and willing or had a predisposition or prior intent to commit the

offense, or 2) that the Defendant was not induced or persuaded to commit the offense by law enforcement officers or their agents. (See Jury Instructions in Volume 12, page 13 of trial transcript, attached hereto as Exhibit B). In determining whether Defendant was entrapped, the jury should consider 1) the background of the Defendant, 2) whether it was law enforcement officers or their agents that first suggested the criminal activity, 3) whether the Defendant showed reluctance to perform criminal activity, 4) whether law enforcement officers or their agents induced or persuaded the Defendant to perform criminal activity, and 5) whether law enforcement officers or their agents offered exceptional persuasion or merely solicited the commission of a crime. (See Jury Instructions in Volume 12, page 13 of trial transcript, attached hereto as Exhibit B).

On Defendant's motion, the trial court must enter a judgment of acquittal, notwithstanding the verdict of the jury, on any count for which there was insufficient evidence to sustain a conviction. Fed. Rules Crim Proc. R 29. In other words, if there was insufficient evidence to prove beyond a reasonable doubt any of the propositions which were the government's burden to prove, a judgment of acquittal must be entered.

B. Government did not offer sufficient evidence to prove beyond a

reasonable doubt Defendant's intent under "strongly corroborative

circumstances."

In order to secure a conviction on Count II, the government must prove beyond a reasonable doubt that, among other things, Defendant, with "strongly corroborative circumstances" intended for Tony Evola to engage in conduct constituting a felony that involved the use, attempted use or threatened use of force against Judge Joan H. Lefkow. Examples of "strongly corroborative circumstances" include a) the fact that Defendant offered or promised payment or some other benefit to the person solicited if he would commit the offense; b) the fact that the Defendant threatened harm or some other detriment to the person solicited if he would not commit the offense; c) the fact that the Defendant repeatedly solicited the commission of the offense, held forth at length in soliciting the commission of the offense, or made express protestations of seriousness in soliciting the commission of the offense; d) the fact that the Defendant believed or was aware that the person solicited had previously committed similar offenses; and e) the fact that the Defendant acquired weapons, tools or information suited for use by the person solicited in the commission of the offense or made other apparent preparations for the commission of the offense by the person solicited. (See Jury Instructions in Volume 12, pages 12 and 13 of trial transcript, attached hereto as Exhibit B). A brief examination of the evidence offered at trial will

show that none of the guidelines for "strongly corroborative circumstances" were met, and the government offered no other evidence that could possibly be considered "strongly corroborative" of Defendant's alleged intent to solicit the murder of a federal judge.

The first example of "strongly corroborative circumstance" given to the jury is the fact that Defendant offered or promised payment or some other benefit to the person solicited if he would commit the offense. Examination of the testimony of government agent Tony Evola, as well as of the tapes played by the government at trial show that Defendant never offered Tony Evola payment or any other benefit in exchange for committing any crime. In fact, it is Evola who repeatedly asks Defendant for money and other resources, and is continually turned down by the Defendant. Similarly, an examination of the tape transcripts reveals that Defendant never threatened any harm or detriment to Evola if Evola was unwilling to commit an offense. Far from it – the tapes are notable for how gingerly Defendant tries to handle Evola's repeated attempts to solicit Defendant. Nothing that could vaguely be considered a threat to Evola ever issues from Defendant's mouth.

Another example of a strongly corroborative circumstance is the fact that the Defendant repeatedly solicited the commission of the offense, held forth at length in soliciting the commission of the offense, or made express

protestations of seriousness in soliciting the commission of the offense. Here again, the government's own witness, and the tapes offered by the government, show that this situation did not obtain. Nowhere does Defendant solicit the commission of the offense, not even to mention holding forth at length on the topic. Rather, it is government agent Evola who repeatedly pushes Defendant to discuss the matter, and even cuts Defendant off when Defendant expresses that he has no desire to discuss the matter.

The next example of a strongly corroborative circumstance is where a Defendant believes that the person solicited had previously committed similar offenses. There is very little evidence put forth for this by the government. In fact, that evidence, as highlighted by the government in its closing argument is that government informant Evola told Defendant that Evola had a cousin in prison. To make the stretch from "having a cousin in prison" to "this man can arrange a murder" seems like a stretch that no reasonable mind could make, lacking further evidence.

The final example of "strongly corroborative circumstance" given to the jury in this matter was the fact that the Defendant acquired weapons, tools or information suited for use by the person solicited in the commission of the offense or made other apparent preparations for the commission of the offense by the person solicited. As noted above, not only did Defendant not

procure weapons, tools or information for Evola, Evola specifically requested money and assistance and was rejected by the Defendant. The only evidence offered by the government which could be considered to fit into this category was the allegation that Defendant attempted to procure the address of Judge Lefkow. However, on the record of this trial, no reasonable jury could conclude that that constituted proof beyond a reasonable doubt that Defendant intended to have the judge murdered. The various tapes and emails admitted into evidence show that Defendant had asked for or given addresses of numerous people during the surveillance by the government informant Evola. Defendant never attempted to have any of those people murdered. In fact, when Evola sought Defendant's imprimatur to murder Ken Dippold, Pat Langeballe and Dan Hasset, Defendant, despite knowing the addresses of these people, tells Evola in no uncertain terms that he is not interested in having anyone killed.

Since the government did not provide evidence of any of the "strongly corroborating circumstances" provided in the jury instructions, it needed to come up with some alternative evidence that could be argued as "strongly corroborating." It seemed that the government hoped that information regarding the shootings committed by Benjamin Smith would suffice here. However, no amount of argument can make Defendant's statements praising

Smith, nor his callous laughter when discussing Smith's victims, strongly corroborative of his intent to have a federal judge murdered approximately three years later.

It is also worth noting that the government needed to prove beyond a reasonable doubt that it was a federal official whom the Defendant hoped to have killed. Note again in the trial transcript and the transcript of tapes attached hereto the absolute lack of evidence that the "rat" being talked about was Judge Lefkow. In the evidence submitted by the government, the word "rat" is used by the informant in many permutations, none of them clearly applying to Judge Lefkow. The government tries to tie that up by asking Evola if the rat he was referring to was Judge Lefkow, and of course, Evola says yes. However, who Evola thought he was talking about would be completely irrelevant to the issue of Defendant's intent.

This makes the last question here whether the government offered any evidence that Defendant intended the victim of his (so-called) solicitation to be a United States District Court judge. The government attempted to argue that Defendant had every reason to want to kill Judge Lefkow, as she had ruled against him in a trademark case. Again, the government's own witnesses put the lie to this claim. Both Judge Lefkow herself and James Amend show that Judge Lefkow actually ruled in favor of Defendant and his

organization. It was the Appellate Court that required Judge Lefkow to enter an order adverse to Defendant. In fact, Judge Lefkow even refused to assess attorneys fees against Defendant and his organization, after entering an order against them at the command of the Appellate Court.

The government offered no reason whatsoever to explain or prove that Judge Lefkow was a target of the alleged solicitation, and did not prove Defendant's intent under any strongly corroborating circumstance. Therefore, Defendant is entitled to a judgment of acquittal as a matter of law on this count.

C. Government did not offer sufficient evidence to prove beyond a reasonable doubt that Defendant solicited, commanded, induced or otherwise endeavored to persuade Tony Evola to commit the felonious assault and murder of Judge Lefkow.

The government also carried the burden on this count of proving beyond a reasonable doubt that Defendant solicited, commanded, induced or otherwise endeavored to persuade Tony Evola to murder Judge Lefkow. Again, simple analysis of the government's evidence will show that no reasonable jury could have come to the conclusion that the government had met its burden.

Of all of the tapes introduced into evidence by the government, the conversation concerning, broadly, "exterminating rats," appears again and again. Interestingly, this conversation is never initiated by the Defendant, but each time by the government agent Tony Evola. Clearly, Defendant has solicited, commanded or induced absolutely nothing from the government agent. Rather, the agent Evola, as he testified at trial, repeatedly tried to keep bringing the subject up after Defendant had clearly expressed his lack of interest in Evola's plot.

Ironically, it is Defendant's very denial of any interest in Evola's plot that the government argues as "proof" that Defendant endeavored to get Evola to kill a judge. Specifically, by saying that he didn't like a specific person, or wouldn't care if something bad happened to that person, but also saying that he wants no part in causing any harm to come to that person, Defendant is creating "plausible deniability," and thereby signaling the agent to Defendant's (so-called) true intent. To begin with, it puts the Defendant, and in fact any target of government investigation in an impossible position. When the agent brings up the topic of the targets enemy, and confirms that there is no love lost between the two, the target cannot now avoid being charged. If the target says "Kill him," he has obviously committed a crime.

On the other hand, if the target says to the agent "Don't kill him," he is building "plausible deniability" and signaling his true intent.

Therein lies the failure of the government's proofs. It wants the jury to find that, because Defendant refused to agree to the agent's plot, but simultaneously refused to directly command Evola not to harm anyone, that intent has been proven. However, whether the government likes it or not, Defendant's statement was exactly correct. Evola could be expected to act according to the dictates of his own conscience, and Defendant telling him to do exactly that does not constitute solicitation.

D. <u>Government did not offer sufficient evidence to prove beyond a reasonable doubt that Defendant was not entrapped</u>.

In a case where the defense of entrapment is properly raised, as it was here, the government has the burden of proving beyond a reasonable doubt that Defendant was not entrapped. Specifically, the government has to prove that either 1) before contact with law enforcement the Defendant was ready and willing or had a predisposition or prior intent to commit the offense, or 2) that the Defendant was not induced or persuaded to commit the offense by law enforcement officers or their agents. In determining whether Defendant was entrapped, the jury should consider 1) the background of the Defendant, 2) whether it was law enforcement officers or their agents that first suggested

the criminal activity, 3) whether the Defendant showed reluctance to perform criminal activity, 4) whether law enforcement officers or their agents induced or persuaded the Defendant to perform criminal activity, and 5) whether law enforcement officers or their agents offered exceptional persuasion or merely solicited the commission of a crime.

The law regarding the defense of entrapment is set out nicely in the case of Jacobsen v. Unites States, 503 U.S. 540, 112 S. Ct. 1535, 118 L. Ed. 2d 174 (1992). This is an important case to understand because of its parallels with the case at bar. The case in its entirety is attached hereto as Exhibit I. Jacobsen was charged with receiving child pornography, was convicted in the trial court, and his conviction was affirmed in the Court of Appeals. Jacobsen argued entrapment, and the United States Supreme Court reversed his conviction. Jacobsen v. United States, 503 U. S 540, at 554. The parallels with the instant case are stunning.

In both cases, the government initiated contact between the Defendant and their agent. In both cases, the government agent pretended to be a kindred spirit, in a technique known as mirroring, Jacobsen v. United States, 503 U. S 540, at 544, in order to build trust between the agent and the Defendant. In both cases the government's attempts to induce the Defendant into the commission of a crime lasted in excess of two years.

Here is where the cases begin to differ. Jacobsen actually committed the crime, and admitted to having done so. Jacobsen v. United States, 503 U. S 540, at 547. So in that sense, Jacobsen is much more culpable than Defendant in the instant case. Jacobsen, although he had possessed child pornography prior to his contact with government agents, was not violating the law at the time he did so. This was true, in spite of the fact that he had responded readily to attempts to sell him child pornography. Because the government could not prove Jacobsen was predisposed to commit the crime before contact with government agents, Jacobsen v. United States, 503 U. S 540, at 549, Jacobsen was entitled to a judgment of acquittal.

There is not question that the government attempted to induce Defendant in the instant case into committing a crime. The repeated contact over a period of years, and repeated attempts by Evola to get Defendant to agree to the killing of someone, anyone, indicates that. The only question is, was Defendant predisposed, prior to the contact with Evola in spring of 2000, predisposed to the act of soliciting the murder of a federal official. There are several questions to help a jury in determining this.

First among them is the background of the Defendant. In the instant case, Defendant has no history whatsoever of violent crime, and certainly no history of violent action against a federal official. The second question is

whether it was law enforcement officers or their agents that first suggested the criminal activity. From the testimony of the government's own witnesses, it is known that the government agent first suggested a killing to the Defendant, not the other way around. Next is whether the Defendant showed reluctance to perform criminal activity. Read again the transcript of recorded conversations that are part of the record in this matter. The Defendant showed extreme reluctance to engage in any criminal activity. Also note that in Jacobsen, the amount of reluctance shown by the Defendant was very little, and still his conviction was reversed. Next is whether law enforcement officers or their agents induced or persuaded the Defendant to perform criminal activity. This has been argued above. The government, through its agent Tony Evola, campaigned for years to persuade Defendant to commit a criminal act. Finally, consider whether law enforcement officers or their agents offered exceptional persuasion or merely solicited the commission of a crime. Notice in the transcripts how the government agent not only suggests killing, but tries to change the Defendant's mind each time the Defendant is unwilling to agree to Evola's plot.

Again, the governments attempt at evidence of Defendant's predisposition is based on evidence concerning the Benjamin Smith shootings. However, the fact that Defendant may have made light of the Smith

shootings certainly can not be evidence of predisposition to murder a federal official. It is also particularly important to remember that at the time of the initial government contact with Defendant, Judge Lefkow had yet to make the ruling which the government claims made Defendant so furious that he ordered her murder. These can not possibly indicate predisposition. The government offered no valid evidence to support the claim of Defendant's predisposition to commit the crime. Jacobsen controls here. Even if Defendant had committed and admitted the crime, the government's failure to prove beyond a reasonable doubt that Defendant was not entrapped entitles Defendant to a judgment of acquittal as a matter of law on this Count.

## III. Motion for Judgment of Acquittal – Count IV – 18 USC 1503(a).

### A. Introduction

On April 26, 2004, Defendant was found guilty of Count IV of the Third Superceding Indictment, charging him with obstruction of justice. Specifically, Defendant was charged obstructing justice by soliciting the assault and murder of United States District Judge Joan Humphrey Lefkow. (See Third Superceding Indictment, attached hereto as Exhibit A).

As the jury was instructed, in order to find Defendant guilty on Count IV, the jury must find beyond a reasonable doubt that 1) Judge Lefkow was an

officer of any court of the United States, 2) that Defendant tried to influence, intimidate or impede Judge Lefkow by soliciting her murder on account of her being a judicial officer, 3) that Defendant acted knowingly, and 4) that the Defendant's acts were done with the purpose of wrongfully impeding the due administration of justice.

On Defendant's motion, the trial court must enter a judgment of acquittal, notwithstanding the verdict of the jury, on any count for which there was insufficient evidence to sustain a conviction. <u>Fed. Rules Crim Proc. R 29</u>. In other words, if there was insufficient evidence to prove beyond a reasonable doubt any of the propositions which were the government's burden to prove, a judgment of acquittal must be entered.

B. <u>Government did not offer sufficient evidence to prove beyond a reasonable doubt that Defendant intended to influence, obstruct or impede Judge Lefkow by soliciting her murder.</u>

As was argued above, the government failed to prove beyond a reasonable doubt that Defendant was guilty of soliciting Tony Evola to commit a forcible assault and murder upon United States District Judge Joan Humphrey Lefkow. The government failed in this burden because, as argued more fully above, no reasonable jury could have found beyond a reasonable doubt that any of the essential elements of the case had been proven; that is,

neither Defendant's intent under strongly corroborative circumstances, Defendant's attempts to solicited Tony Evola to commit the crime, not the lack of entrapment, were proven by the government.

The government argued, somewhat inaccurately, in its closing statement that, if the jury found Defendant guilty of soliciting the murder of Judge Lefkow, then they also must find Defendant guilty of Count IV obstruction of justice. While the government's attorney misstated the law here (beyond proving the solicitation, the government would also have to prove the other two elements listed below, that is, acting knowingly and with the purpose of impeding justice, in order to earn a conviction on Count IV), the opposite of the government's proposition is surely true. If the government failed to prove that Defendant solicited Tony Evola to murder Judge Lefkow, then Defendant is entitled to a judgment of acquittal on this Count, Count IV, as a matter of law.

IV.   **Motion for Judgment of Acquittal – Count V – 18 USC 1503.**

A.   Introduction

On April 26, 2004, Defendant was found guilty of Count V of the Third Superceding Indictment, charging him with obstruction of justice.

Specifically, Defendant was charged with directing his father to give false information to a federal grand jury. (See Third Superceding Indictment, attached hereto as Exhibit A).

As the jury was instructed, in order to find Defendant guilty on Count V, the jury must find beyond a reasonable doubt that 1) there was a pending grand jury investigation, 2) Defendant intended to influence, obstruct or impede the due administration of justice, 3) that Defendant acted knowingly, and 4) that the Defendant's acts were done with the purpose of wrongfully impeding the due administration of justice.

On Defendant's motion, the trial court must enter a judgment of acquittal, notwithstanding the verdict of the jury, on any count for which there was insufficient evidence to sustain a conviction. <u>Fed. Rules Crim Proc. R 29</u>. In other words, if there was insufficient evidence to prove beyond a reasonable doubt any of the propositions which were the government's burden to prove, a judgment of acquittal must be entered.

B. <u>Government did not offer sufficient evidence to prove beyond a reasonable doubt that Defendant intended to influence, obstruct or impede the due administration of justice.</u>

In its attempt to prove Defendant guilty of Count V, the government offered as its only evidence a recording of a conversation had between

Defendant and his father on April 21, 2003, while Defendant was incarcerated at the Metropolitan Correctional Center in Chicago, IL. Specifically, the government focused on a portion of a tape in which Defendant asked his father to remember to tell the grand jury that he had been sad and cried about the death of Benjamin Smith. The government followed this up with testimony indicating that the members of the CNN crew filming on that day did not remember Defendant crying, or being broken up so much that he could not continue his interview, and ran into his house.

Of course it is of paramount importance for the government to prove that Defendant was instructing his father to lie when he told him to remind the grand jury that he had cried over Benjamin Smith. If the statement is true, it certainly cannot be considered an attempt to impede the due administration of justice. To that end, the government produced the testimony of Tracy Scruggs, a producer with CNN who was working on the interview of the Defendant. While Ms. Scruggs testified on direct examination that she did not recall seeing Defendant upset or run into his house, this turned out to be inaccurate. Under cross examination, Scruggs admitted that not everything that happened the day of the interview was recorded on tape. (Volume 10 pages 9-14 of trial transcript). More importantly, Scruggs admits that she remembered Defendant getting "misty-eyed," and she remembered

Defendant going into his house. (Volume 10 pages 9-14 of trial transcript). In other words, the government's own witness confirms the truth of the statement made by Defendant to his father on April 21, 2003.

With this testimony comprising the total of the evidence regarding Count V, no reasonable jury could have found beyond a reasonable doubt that Defendant intended to obstruct justice when making that statement to his father. If the statement was true, as all of the evidence in the record indicates that it was, Defendant's statement to his father constitutes little more that a reminder to tell the truth, the whole truth and nothing but the truth. Because the government failed to offer sufficient evidence to prove beyond a reasonable doubt that Defendant's statement to his father was intended to impede justice, Defendant is entitled as a matter of law to a judgment of acquittal on Count V of the indictment.

C. <u>Government did not offer sufficient evidence to prove beyond a reasonable doubt that Defendant acted knowingly</u>.

If, *arguendo*, the government had proved that the April 21, 2003 conversation with his father constituted an attempt on Defendant's part to influence, obstruct or impede justice, the government would further have to prove that Defendant had acted knowingly in doing so. In other words, if the statement that Defendant cried and went into his house was untrue, it must

be shown that Defendant knew that it was untrue. This, the government completely failed to do.

The government's own witness recalled that Defendant had cried, and at one point had had to return to his house while CNN was on the scene. (Volume 10 pages 9-14 of trial transcript). With this being the case, certainly it would not be unreasonable if the Defendant recalled the same series of events. While it could be suggested by the government that Defendant knew the statement he asked his father to recall to the grand jury was untrue, certainly the fact that the government witness agreed with the Defendant cuts against that claim. Nonetheless, the government could have made exactly that claim – had they presented any other evidence questioning the veracity of the Defendant's statement. The government did not do so. While they did play part of the tape, and only part of it, the government's own witness testified that not everything that happened at Defendant's home that day was recorded on tape.

In short, the government offered no evidence whatsoever that Defendant acted knowingly to obstruct justice, when he told his father to remember to tell the grand jury that Defendant was upset by the acts and the death of Benjamin Smith. Because the government failed to provide sufficient

evidence to prove an essential element of its case beyond a reasonable doubt, Defendant is entitled to a judgment of acquittal on Count V as a matter of law.

## V. Motion for New Trial

### A. Introduction

According to Federal Rule of Criminal Procedure 33, a judge may grant a new trial to a Defendant in a case when the interests of justice require it. During Defendant's trial, there were several anomalies that require Defendant be granted a new trial if justice is to be served.

### B. Allowing testimony regarding the Benjamin Smith shootings was unduly prejudicial while having little no no probative value, and requires a new trial be granted in this matter.

As has been argued throughout this brief, the government introduced evidence of the Smith shooting for two primary reasons. The first of these was to show that Defendant was a violent man, therefore more likely to have commissioned a murder. The second was to show predisposition of the Defendant to commit the solicitation of murder of a federal official, thereby allowing the government to avoid the entrapment defense. The government's logic has been shown through the arguments above to be fatally flawed. The government argued Defendant's involvement in the Smith shootings as if he had been proven to have had an involvement, when

he has not. This is obviously highly prejudicial. In light of the complete lack of probative value and the high level of prejudice, the admission of evidence concerning the Smith shootings necessitates a new trial.

Incidentally, the same logic applies to the admission of the <u>White Man's Bible</u> into evidence, and the allowing James Amend to testify regarding "judgment proofing," and in the process to say that the Defendant's organization had previously been held civilly liable for a killing. The book was written years before Defendant's involvement in the organization, perhaps even before Defendant's birth. It can say nothing about Defendant's state of mind or intentions. Similarly, the information that a previous leader of Defendant's organization, at a time prior to Defendant's involvement, was held civilly liable for a killing, has no probative value in this matter. Both these things, however, were used by the government to paint the Defendant as an inherently violent man, and are therefore highly prejudicial. Their admission into evidence necessitates a new trial.

WHEREFORE, the Defendant MATTHEW HALE prays this Honorable Court vacate the judgment of conviction entered upon the jury verdict of April 24, 2004; enter a judgment of acquittal in favor of Defendant on all counts, or in the alternative, order a new trial on all counts; and order the release of Defendant from custody immediately.

Respectfully submitted,

Timothy M. Murphy (6257595)
Attorney for the Defendant

TIMOTHY M. MURPHY, P.C.
3758 W. Montrose Ave.
Chicago, IL 60618
773.463.1203

# See Case File For Exhibits