AE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
FEB 2 4 2005
FEB 24 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MATTHEW HALE,

    Defendant.

No. 03 CR 011
Judge James T. Moody

NOTICE OF FILING

By U.S. Mail to:

Judge James T. Moody
United States District Court
Northern District of Indiana
5400 Federal Plaza
Hammond, IN 46320

M. David Weisman
Asst. United States Attorney
219 S. Dearborn St.
5th Floor
Chicago, IL 60604

Carol Anne Bozarth
U.S. Probation Officer
55 E. Monroe St. Suite 1500
Chicago, IL 60603

    PLEASE TAKE NOTICE THAT on this 23rd ~~22nd~~ day of February, 2005, I mailed for filing with the Clerk of the United States District Court for the Northern District of Illinois at Chicago, Illinois the attached <u>Defendant's New Position Paper as to Sentencing Factors</u> for filing, a copy of which is hereby served upon you.

                              Respectfully submitted,

                              /s/ Matthew Hale
                              Matthew Hale, Pro Se

Matthew Hale #15177-424
Metropolitan Correctional Center
71 West Van Buren St.
Chicago, IL 60605

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

FEB 2 4 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                03 CR 011

MATTHEW HALE,                          Judge James T. Moody

    Defendant.

### DEFENDANT'S NEW POSITION PAPER AS TO SENTENCING FACTORS IN LIGHT OF United States v. Booker

Now comes Matthew Hale, pro se, presenting a new position paper (incorporating various sections of the previously filed position paper as indicated) as to sentencing factors pursuant to LCr32.1(g) in light of United States v. Booker 125 S.Ct. 738, 2005 WL 50108, 2005 U.S. LEXIS 628, which has radically altered the scheme of federal sentencing, stating as follows:

It remains my hope that the Court will reconsider the denial of my motion for judgment of acquittal on Counts Two and Four, recognizing that an omitted apostrophe(!) after the "s" in "rats" in the transcript of the 12/5/02 conversation has resulted in my continued imprisonment for something I obviously didn't do and that thus any sentence for something I didn't do is unjust. (I note that I offered no new arguments in my two motions to reconsider--that all arguments contained therein appeared in my opening and reply briefs.) Not only could no rational jury find me guilty beyond a reasonable doubt of soliciting Judge Lefkow's murder, but I clearly <u>refused</u> to join a plot against her life. Surely, surely an innocent man shouldn't remain in prison because of an omitted punctuation mark? Surely the Court can reconsider its decision denying my motion for judgment of acquittal when its decision and <u>entire thinking of the case rested on something clearly untrue:</u> that Evola proposed on December 5, 2002 that Judge

1

Lefkow be murdered? I don't wish to be an irritant to the Court and apologize if I have been, but nor do I wish to continue to be wronged by this falsehood. It's just that I am the aggrieved party who has been imprisoned even though I <u>refused</u> to join a plot against Judge Lefkow's life <u>the one and only time</u> such a plot was ever talked about: December <u>17</u>th, 2002.

It is consequently very difficult for me to separate my innocence from any discussion of sentencing--and nor should I since 18 U.S.C. sec. 3553(a)(1) requires that the Court consider "the nature and circumstances of the offense" and the nature and circumstances show that I am innocent and didn't offend at all. A sentence for Count One I understand and accept but a sentence on Counts Two and Four is a gross miscarriage of justice: I deserve not more prison time but rather an <u>apology</u> from the prosecutors and the FBI who cunningly sought to fabricate a mythical federal case (by virtue of its "femala rat" email) and who callously caused Judge Lefkow and her family to think that her life was in danger needlessly and wrongly. They owe her an apology as well. Every day I live under this Kafkaesque nightmare--not only as I spend my days in prison, but the allegation that I sought Judge Lefkow's murder and that she herself may believe such is a source of deep pain for me. And so, I have already been punished--not only for something I didn't do but also for something I expressly said that I didn't want and refused to be a party to.

That said, I will have much more to say about my innocence during my address to the Court prior to the imposition of sentence should the latter sad event indeed occur. For the rest of this position paper, however, I will address what sentence I may lawfully and constitutionally receive.

## Argument

I.  Since the Federal Sentencing Guidelines were mandatory at the time I allegedly committed the offenses, and Booker affirmed that any enhancements or upward departures under that scheme are precluded by the Constitution unless they are presented to a jury and proven beyond a reasonable doubt (which has not been done in this case), the imposition of a sentence of more than 97 months imprisonment would violate my Fifth Amendment Due Process rights.

The merits majority in Booker held pursuant to Blakely v. Washington, 2004 WL 1402697 (2204), Apprendi v. New Jersey, 530 U.S. 466 (2000), and Jones v. United States, 526 U.S. 227 (1999), and the Fifth and Sixth Amendments that the statutory maximum sentence in a system of mandatory guidelines is the high end of a guideline range that can be imposed based on facts found by a jury beyond a reasonable doubt or admitted by the defendant. The statutory maximum in this case is thus 97 months (a base level of 28, Criminal History Level I)--the maximum sentence that could be imposed on facts found by the jury. (The jury found that I violated 18 U.S.C. sec. 373 but did not find any of the facts or conditions precedent for any enhancements or upward departures.)

The remedial majority in Booker, however, has now rewritten the Sentencing Reform Act to make the guidlines advisory. This means that instead of having a ceiling of 97 months imprisonment, a defendant allegedly committing the same offenses today would face a maximum of 240 months--the statutory maximum found in 18 U.S.C. sec. 373. However, I argue that it is constitutionally impermissible--a violation of due process--for the maximum sentence I face to be retroactively increased from 97 months to 240 months.

When my alleged offenses were committed, the guidelines were mandatory, and under those guidelines, I would have faced a sentence in the 78-97 months

range. The imposition of enhancements upon the judicial finding of certain facts was mandatory too. However, it is precisely those enhancements (and upward departures) which the merits majority in Booker ruled are unconstitutional, and if they are unconstitutional now, they were unconstitutional in late 2002 when my alleged offenses were committed. I thus have a right to receive what was the legal and constitutional sentence for my alleged actions when they occurred: a maximum of 97 months imprisonment. It doesn't matter whether the decision (Booker) which established that the mandatory enhancements of the Federal Guidelines were unconstitutional came after my alleged actions since the Constitution itself, and the rights it provides, preceded them. Nor does it matter that now the guidelines are advisory because they weren't at the time of my alleged actions. In other words, I bargained for a sentence of 78-97 months and did not bargain for a sentence that could only be imposed were my Constitutional rights to be violated.

Further Analysis: DUE PROCESS LIMITS APPLICATION OF THE REMEDY OF UNITED STATES V. BOOKER

In Booker, the Supreme Court held that Sixth Amendment jury trial protections apply to the federal sentencing guidelines. To remedy the constitutional error, the Court judicially rewrote the statutory sentencing scheme to make the guidelines advisory rather than mandatory. The Court applied its remedy to the two respondents in that case, Booker and Fanfan, and said the decision also applies to other cases not yet final at the time the decision issued. However, in so holding, the Court was not asked, and did not answer, the question of whether other constitutional restrictions prevent courts from applying the remedy of Booker to the disadvantage of offenders whose crimes pre-dated that decision. I assert that the Due Process Clause of the Fifth Amendment, as already construed by the Supreme Court, prohibits courts from applying the Booker remedy to the disadvantage of any criminal defendant whose crime was committed

4

before Booker was decided.

The genesis of the due process rule lies in the Supreme Court's Ex Post Facto Clause jurisprudence, wherein for centuries the Court has followed the rule that the Constitution prohibits application of a law inflicting a greater punishment than the law annexed to the crime, when committed, because it lacks fair notice and government restraint required by constitutional norms. See e.g. Miller v. Florida, 488 U.S. 423 (1987); Weaver v. Graham, 450 U.S. 24 (1981); Beazell v. Ohio, 269 U.S. 167 (1925); Calder v. Bull, 3 U.S. (Dall.) 386, 1 L.Ed. 648 (1798).

The Court extended that reasoning to the Due Process Clause of the Fourteenth Amendment in Bouie v. City of Columbia, 378 U.S. 347 (1964) and to the Due Process Clause of the Fifth Amendment, at issue here, in Marks v. United States, 430 U.S. 188 (1977). Those decisions reasoned that notice, forseeability, and, in particular, the right to fair warning as the concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct, are fundamental to our concept of constitutional liberty. Accordingly, Marks and Bouie held that due process prohibited state and federal courts from doing what legislatures cannot themselves constitutionally do: alter and apply a criminal punishment to a defendant's disadvantage (albeit through judicial construction of a statute) after the crime was committed. The Court worded the rule thusly: "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' [the construction] must not be given retroactive effect." Bouie, 378 U.S. at 354. The Court reaffirmed that rule more recently in Rogers v. Tennessee, 532 U.S. 451 (2001) while declining to apply a similar analysis to changes in common law.

To invoke this due process analysis, courts must address the following

questions: (1) Did judicial construction of a criminal statute change the law in a manner that was unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue? (2) Did the change in law occur after the defendant committed the alleged crime for which he is being sentenced? If the answer to these questions is in the affirmative, the court cannot apply the change in law to the defendant's disadvantage. I assert that the answers to both questions in this case are unambiguously in the affirmative.

A. The remedial change was unexpected.

First, there can be no question that the change in law effected by Justice Breyer's majority "remedy" opinion in Booker was "unexpected and indefensible by referende to the law which had been expressed prior to the conduct in issue." As the Court acknowledged, "The Guidelines as written [] are not advisory; they are mandatory and binding on all judges." Booker, 2005 WL 50108 at *9. They had been so construed and applied without fail until Booker. See Mistretta v. United States, 488 U.S. 361 (1989); United States v. Dunnigan, 507 U.S. 87 (1993); Witte v. United States, 515 U.S. 389 (1995); United States v. Watts, 519 U.S. 148 (1997); Edwards v. United States, 523 U.S. 511 (1998).

That changed solely because the Breyer majority in Booker said it must, to save the guidelines scheme and best serve Congress's goal of ensuring uniform punishment. The Court recognized that the constitutional remedy--making the guidelines advisory rather than mandatory--was a remedy no party briefed or sought, and was directly contrary to the clearly expressed will of Congress. See Booker, 2005 WL 50108 at *31 (Stevens, J., dissenting in part)("Neither the Government, nor the respondents, nor any of the numerous amici has suggested that there is any need to invalidate either provision in order to avoid violations of the Sixth Amendment in the administration of the Guidelines."); id., 2005 WL 50108 at *36 ("The novelty of this remedial maneuver perhaps explains why no

6

party or <u>amicus curiae</u> to this litigation has requested the remedy the Court now orders. In addition, none of the federal courts that have addressed Blakely's application to the Guidelines has concluded that striking down sec. 3553(b)(1) is a proper solution.").

Even Justice Breyer's <u>Booker</u> majority observed that its redefinition of the federal sentencing scheme was "radical", but justified it by saying it "would deviate less radically from Congress' intended system," <u>Booker</u>, 2005 WL 50108 at *17, than superimposing jury/reasonable doubt standards on the guidelines. <u>Blakely v. Washington</u>, 124 S.Ct. 2348 (2004) and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) certainly forshadowed the Court's core holding: its conclusion that the federal sentencing might not meet constitutional muster under the Sixth Amendment, but nothing in those decisions foreshadowed or compelled the Breyer remedy, which the Court wove anew from whole cloth. <u>See</u> Booker, 2005 WL 50108 at *32 (Stevens, J. dissenting in part, joined by Souter, J., and Scalia, J., in part); <u>see also id</u>. at *47 (Scalia, J., dissenting in part); <u>id</u>. at *51 (Thomas, J., dissenting in part).

    B.  <u>The change in the statute's construction occurred when the Court devised its remedy in Booker, not before</u>.

In answer to the second question, the court needs to determine when the statute's construction changed vis a vis when the alleged crime occurred. There are really only three possible dates to consider:

* January 12, 2005, the date the Court decided <u>Booker</u>.

* June 24, 2004, the date the Court decided <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004); or

* June 26, 2000, the date the Court decided <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

<u>Apprendi</u> held that any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts estab-

7

lished by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. Apprendi applied that holding in the context of a non-guidelines sentencing scheme. Blakely extended Apprendi to hold that it applies with equal force to a state guidelines sentencing scheme. The Court in both Apprendi and Blakely expressly declined to decide whether those decisions would be applicable to the federal guidelines. Relying upon those pronouncements, the Eleventh, Second, Fourth, Fifth, and Sixth circuits held that Blakely did not apply to the federal guidelines. The Seventh in Booker itself, of course, held that it did. Only the Supreme Court's decision in Booker resolved the matter. Likewise, the remedy applied in Booker to make the federal sentencing guidelines advisory was a completely new rule of law created and first applied on January 12, 2005.

Accordingly, the remedy cannot, under due process, disadvantageously be applied to any person whose alleged crime occurred before January 12, 2005.

C. Booker's Sixth Amendment protection works together with the Bouie/Marks due process for offenses committed prior to the date Booker was decided.

Nothing in this analysis conflicts with Booker's directive that "we must apply today's holdings--both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act--to all cases on direct review. See Griffith v. Kentucky, 479 U.S. 314, 328 (1987) ('[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases...pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past'). See also Reynoldsville Casket Co. v. Hyde, 514 U.S. 749, 752 (1995) (civil case); Harper v. Virginia Dept. of Taxation, 509 U.S. 86, 97 (1993)(same)." Booker, 2005 WL 50108 at *29. Instead, the due process requirement of Bouie and Marks, as explained in Rogers, works hand-in-hand with Booker, merely imposing an additional, narrow constitutional restriction. In other words, both holdings in Booker must apply to all cases pending--

8

including to all crimes committed before Booker was decided--but only so long as Booker's application does not disadvantage a defendant.

In practical terms, that means that a defendant whose alleged crime was committed before January 12, 2005 may be sentenced under the new Booker advisory guidelines scheme, so long as the sentence imposed is no greater than the sentence lawfully permitted by the mandatory guidelines scheme in effect at the time of the offense. Since exceeding the guidelines range was not permissible under the guidelines prior to Booker, due process provides that exceeding the guidelines range is not permissible now, and as for enhancements and upward departures, these are--per the Booker merits majority-- barred without a jury finding of beyond a reasonable doubt of the facts that form their predicate.

In summation, since: 1) the Federal Guidelines were mandatory at the time of my alleged offenses, 2) it is unconstitutional under a mandatory guidelines scheme for a criminal defendant's sentence to be increased beyond the guideline range on the basis of facts not found by a jury beyond a reasonable doubt, and 3) the Fifth Amendment forbids courts from interpreting a law in such a way so as to increase a criminal defendant's possible punishment beyond what it lawfully (and this of course includes constitutionally) was at the time of his alleged offenses, the maximum possible prison sentence I face in this case is 97 months. (This further is the only way to reconcile the Stevens majority opinion, the Breyer majority opinion, prior Supreme Court decisions, and the Fifth Amendment.) Whatever sentence imposed under that can be imposed on the basis of the advisory nature of the guidelines, 18 U.S.C. sec. 3553(a), and whatever other information the Court sees fit, as well as whether the sentence is "reasonable" per the Breyer opinion. (Of course, going below the guidelines for pre-Booker offenses--for any reason--to achieve a "reasonable"

sentence--would not disadvantage the defendant, and therefore would not offend due process or <u>Booker</u>. A sentence of thus lower than 78 months is permissible.)

II. Aside from the unconstitutionality of any sentence above 97 months as set forth above, any consideration of the enhancements and upward departures listed by the Probation Officer in her initial Report would be factually inappropriate for the reasons set forth in pages 7-9a of my previously-filed "Defendant's Position Paper on Sentencing Factors."

III. Aside from the unconstitutionality of any sentence above 97 months as set forth above, any guideline enhancement or upward departure the Court were to rely upon to increase my sentence <u>above</u> 97 months (which as already stated would be unconstitutional), should have to first be submitted to a jury and proven beyond a reasonable doubt.

While traditionally judicial fact finding has been based upon a preponderance of the evidence standard, <u>Booker</u> arguably stands for the proposition that this standard is now changed, especially where a court is applying guideline enhancements to increase a defendant's sentence above what it otherwise would be.

IV. Aside from all of the above, the imposition of the "terrorism" enhancement would be prima facie unreasonable and violate the principles of Supreme Court precedent and Federal statute.

Taking a man with no previous criminal record and--without a jury finding of beyond a reasonable doubt that he even committed the conduct at issue--magically turning him into a "career criminal" and changing the base level for his alleged offense to 40 from 28, would <u>prima facie</u> be unreasonable, requiring reversal per Breyer's opinion, on appellate review. It would further violate the principles underlying Supreme Court precedent which expressed concern about

10

criminal defendants being punished for conduct never appearing in an indictment, never being proven at a trial, but greatly increasing a defendant's sentence regardless. It would also violate 18 U.S.C. sec. 3553(a) which states "The court shall impose a sentence sufficient, but <u>not greater than necessary</u>" to comply with the rest of 18 U.S.C. sec. 3553(a). It would be-- as the Court deplored in <u>Blakely</u>--"the tail that wags the dog of the substantive offense." It would be wildly disproportionate to the alleged conduct committed in which Judge Lefkow wasn't harmed, there was no chance that she would be harmed, and it was the government informant himself who proposed allegedly that she be harmed.

V. Aside from all of the above, I incorporate pages 3-4 of my previously filed "Defendant's Position Paper on Sentencing Factors" which points out that the law of this district is that the "terrorism" enhancement may not be applied unless the defendant has been convicted of a statutorily-enumerated federal crime of terrorism, which I have not.

VI. Further considerations per the requirements of 18 U.S.C. sec. 3553(a).

18 U.S.C. sec. 3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs sentencing courts to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the kinds of sentences available; (6) the need to avoid un-

11

wanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

    A 78 to 97 month sentence would indeed be sufficient to comply with these purposes (I can't help but note though that I already knew on December 17, 2002 that a crime against a federal judge was "too serious" and that's why I refused to join Evola's new plot.) It may, however, be greater than necessary. Not only am I innocent but the "nature and circumstances" of this case militate heavily in favor of a lighter sentence. After all, if the crime occurred, it only occurred after <u>two years</u> of attempts by the FBI to steer me away from obeying the law as I always had before my association with Tony Evola began. As for the "history and characteristics of the defendant", I have no previous criminal record, am the son of a career police officer, and am a law school graduate. I don't smoke, drink, or do drugs. My character letters show that I am a responsible and honorable citizen and that the image of me that my lawyers inexplicably allowed to reign unchallenged at trial is a false one. I have participated in the democratic process by running for public office. I have sought to persuade people that what I believe in is just--just as others with differing beliefs do the same.

    I note in particular that a <u>higher</u> sentence than 78-97 months (which as already indicated would be unconstitutional) would especially fall afoul of (6) above, resulting in a sentence (especially if the "terrorism" enhancement were applied) grossly disparate from that of other "defendants with similar records (no previous criminal record, in fact) found guilty of similiar conduct." (See infra for more on this.)

    Nor am I likely to reoffend (C). After all, for the first 31 years of my life, I had no criminal record. I have devoted my life to <u>legal</u> and

peaceful change. If anything, this experience has strengthened that commitment because of the terrible slander to my reputation that was previously known to be law-abiding. In other words, I want to make sure that no one ever again is able to even falsely claim that I commit crimes.

VII. Further considerations for a lighter sentence.

While dealing specifically with downward departures pursuant to one of the portions of the Sentencing Reform Act which the Breyer majority has excised, I wish to incorporate pages 9-14 of my previously filed "Defendant's Position Paper on Sentencing Factors" for the explication of two key reasons why a lighter sentence would be appropriate in this case: the mitigating circumstances of my alleged offense and the conditions of my confinement.

## Conclusion

Aside from my being innocent of soliciting the murder of Judge Lefkow, a sentence of 97 months or less imprisonment is constitutionally mandated and, if I were guilty, a sentence of less than 78 months would be appropriate for all of the reasons above.

Respectfully submitted,

Matthew F. Hale, pro se

13